## FISHER v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. April 6, 1920.)

No. 1776.

**Prostitution ⊂⊃1—Interstate transportation of girl not within White Slave Traffic Act; "interstate commerce."**

Where defendant had illicit relations with a girl, who was domiciled in one state, his taking her in an automobile across the line into another state for a brief visit with relations, returning the same day, after which their relations continued, *held* not a transportation in interstate commerce for an immoral purpose within the meaning of White Slave Traffic Act June 25, 1910, § 2 (Comp. St. § 8813).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

In Error to the District Court of the United States for the Northern District of West Virginia, at Wheeling; Alston G. Dayton, Judge.

Criminal prosecution by the United States against George E. Fisher. Judgment of conviction, and defendant brings error. Reversed.

Martin Brown, of Moundsville, W. Va., for plaintiff in error.

Harry H. Byrer, Asst. U. S. Atty., of Martinsburg, W. Va. (Stuart W. Walker, U. S. Atty., and C. N. Campbell, Asst. U. S. Atty., both of Martinsburg, W. Va., on the brief), for the United States.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

KNAPP, Circuit Judge. Plaintiff in error, hereinafter called defendant, was convicted of a violation of the White Slave Traffic Act (Comp. St. §§ 8812–8819). The indictment contains four counts. There was a verdict of guilty on the first two counts and of not guilty on the remaining counts. The trial court overruled a demurrer to the indictment, and this is assigned as error. As applied to the counts on which defendant was convicted, the objections to the indictment seem to us so wanting in merit as not to require discussion. The offense charged is set out substantially in the language of the statute, and the allegations fully apprised defendant of the charge he was called upon to meet. It is enough to say that in our opinion the first two counts are sufficient in form and substance, and the demurrer was properly overruled.

On the merits the case for the government briefly stated is this: Defendant lived near Benwood, which appears to be a suburb of Wheeling, W. Va. Across the river is the town of Bridgeport, in Belmont county, Ohio. The prosecuting witness, a girl barely 16 years old, lived in that county a few miles out in the country from Bridgeport. The defendant became acquainted with her in the latter part of July, 1918, at a carnival in Bridgeport. They went out riding in his automobile that night, with some other persons, and did not return until 3 or 4 o'clock in the morning. Two days later he made an appointment by telephone to meet her that evening on the road near her home, and took her on an automobile ride. Their illicit relations commenced during that ride. There was a similar meeting the next and following nights. On Saturday evening, the 3d of August, they went to Bellaire, Ohio, where they stopped at a hotel and spent the night; he registering them as man and wife. The next morning he took her to a point near her home, and made an arrangement to meet her again in the afternoon at the same place. She joined him there, with a suit case in which she had packed her clothing and other belongings, and he took her in his automobile across the river to Wheeling, where he procured a room for her at a boarding house kept by a Mrs. Davis. He paid for her lodging for a week in advance, and at its expiration paid for another week. During her stay there of some 10 days, and later at a house next door, he visited her almost every evening and remained until a late hour. He frequently took her out to ride in his automobile, and on one such occasion they crossed the river to call on her mother, not at her home, but at the house of her sister, with whom she was staying. They returned a few hours later to the boarding house in Wheeling, and their illicit intercourse continued thereafter the same as before.

The defendant's version of their first meeting and subsequent relations was not materially different from the girl's own testimony, except that he stoutly denied having taken her in his automobile over to Wheeling on the Sunday in question, or having had anything to do with her going there at that time. On the contrary, he says he drove

her to Bridgeport, where he left her, and returned alone by another bridge, and that he was surprised to find her in Wheeling when he got there. In short, he asserts that she went to Wheeling that day without his knowledge or connivance and wholly against his wish.

The question of how and why she first went to Wheeling is the only question of substantial dispute which the record discloses. We need only say that this issue was properly submitted to the jury, and that on her testimony and related circumstances the jury were amply warranted in finding that she was transported by the defendant in interstate commerce for the purpose prohibited by the act; and if that were the only question we should have no hesitation in affirming the judgment of conviction.

As just stated, the defendant, whilst vigorously denying that he had anything whatever to do with the girl's first going to Wheeling, gave practically the same account as she did of what happened afterwards, including his visits to and intercourse with her at the boarding house, and their frequent automobile rides into the country, on one of which they crossed the river into Ohio to visit her mother, as above related. Having reference to his testimony in this regard, the learned trial judge charged the jury as follows:

"And even if you should believe his statement entirely, that he did not aid or transport or cause to be transported for this purpose the woman or girl alleged from the state of Ohio to West Virginia, for this unlawful purpose, yet if you believe what he has substantially admitted, that after she was over here in West Virginia he transported her back to Ohio, and then brought her back to West Virginia, for the purpose of having illicit commerce with her, he has violated this statute, and it is your duty to find him guilty."

The jury evidently understood this to mean that the mere fact of going into another state with the girl and returning, under the circumstances stated, established the defendant's guilt, if he thereafter continued to have intercourse with her. We are unable to give assent to this proposition. To do so would in our opinion put a construction upon the act not permitted by its terms or embraced within its intended scope, to say nothing on the point that the statute so construed would probably be beyond the power of Congress to enact. When the girl first went to Wheeling, whether of her own accord or transported there by defendant, she took her clothing and other personal effects with her and became domiciled in the state of West Virginia; and she continued to reside there for a considerable time, as appears, at least until after the defendant was arrested. When she left her boarding place on the day they visited her mother in Ohio, she did not abandon her place of temporary abode, or take her belongings with her, or go to the home where she had formerly lived with her parents. In short, she obviously intended when they set out to come back to Wheeling the same day, and we think it cannot be said upon the undisputed testimony that defendant brought her back for the "purpose" prohibited by the act. The crossing into Ohio and returning on that occasion was a mere incident of their asssociation, which did not bring about or in any way contribute to the immoral conduct that followed. We are convinced that a violation of the statute cannot be predicated upon

such an incident. Granted that he may have had in mind at the time that he would continue to do what he had been doing, it does not follow and cannot in reason be held that this trip was the interstate transportation of the girl for the purpose of engaging in immoral practices. It was not a means to that end, and therefore not of itself a violation of the statute. As the Supreme Court says in the Caminetti Case, 242 U. S. 470, 491, 37 Sup. Ct. 192, 197 (61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168):

"It may oe conceded, for the purpose of the argument, that Congress has no power to punish one who travels in interstate commerce merely because he has the intention of committing an illegal or immoral act at the conclusion of the journey. But this act is not concerned with such instances. It seeks to reach and punish the movement in interstate commerce of women and girls with a view to the accomplishment of the unlawful purpose prohibited."

That is to say, the interstate transportation denounced by the act must have for its object, or be a means of effecting, or at least of facilitating, the sexual intercourse of the parties. But the mere fact that a journey from one state to another is followed by such intercourse, when the journey was not for that purpose, but wholly for other reasons, to which intercourse was not related, cannot be regarded as a violation of the statute. And so this court held, in Van Pelt v. United States, 240 Fed. 346, 153 C. C. A. 272, L. R. A. 1917E, 1135, a case involving the same principle, that where an interstate journey was taken definitely for another purpose, and would have been taken in any event, the fact that illicit intercourse took place in the course of the journey, as an incidental occurrence, did not bring the case within the meaning and intent of the statute, and would not sustain a verdict of guilty against the accused. See, also, Welsch v. United States, 220 Fed. 764, 136 C. C. A. 370.

We need not pursue the argument. In view of defendant's denial that he transported the girl to Wheeling in the first instance, and the testimony of witnesses to her declarations that she went there by herself and of her own accord, it is manifest that the verdict of the jury may have been based upon, or at least influenced by, the instruction of the court that the subsequent automobile ride into the state of Ohio and back to Wheeling, which the defendant admitted, was of itself a violation of the act, for which it was the duty of the jury to find him guilty. If that instruction was erroneous, because it involved an unwarranted construction and application of the statute, the conclusion is unavoidable that he was wrongfully convicted; and so we are constrained to hold.

Inasmuch as the instruction here considered was virtually the only proposition of law laid down by the court, we are of opinion that an exception to the charge as a whole was sufficient to raise the question. Even if this were not so it would nevertheless be our duty in a case like this to notice "a plain error not assigned."

The judgment will be reversed, and the cause remanded, with instructions to grant a new trial.

Reversed.