### ENGLAND v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. February 1, 1921.)

#### No. 1851.

Prostitution ⊜4—Instruction, in prosecution under White Slave Traffic Act, that certain evidence was immaterial, held erroneous.

In a prosecution for transporting and aiding and assisting in the transportation of a girl in interstate commerce in violation of White Slave Traffic Act, § 2 (Comp. St. § 8813), where there was evidence that the girl went of her own accord in pursuance of previous plans made by her and another girl, who accompanied her without inducement by defendant and that she paid her own fare, an instruction in effect that such facts were immaterial *held* erroneous.

In Error to the District Court of the United States for the Northern District of West Virginia, at Parkersburg; Alston G. Dayton, Judge.

Criminal prosecution by the United States against Benjamin H. England. Judgment of conviction, and defendant brings error. Reversed.

William T. George, of Phillipi, W. Va., and C. M. Hanna, of Parkersburg, W. Va., for plaintiff in error.

C. N. Campbell, Asst. U. S. Atty., of Martinsburg, W. Va. (Stuart W. Walker, U. S. Atty., of Martinsburg, W. Va., on the brief), for the United States.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

• Before KNAPP and WOODS, Circuit Judges, and WEBB, District
Judge.

KNAPP, Circuit Judge. Plaintiff in error, herein called defend-
ant, was convicted of a violation of the White Slave Traffic Act (Comp.
St. §§ 8812–8819). He did not himself testify at the trial, and no wit-.
ness was called in his behalf. The government's proofs may be sum-
marized as follows:

Defendant, a young married man, lived with his wife and two chil-
dren near Belington, Barbour county, W. Va. In the same neighbor-
hood, a mile or so distant, lived with their respective families two young
girls, Gladys Poling, under 16 years of age, and Thelma England, about
a year older, the latter a niece of defendant. They were very friendly
with each other, and defendant was often in the company of Gladys.
Some time prior to October, 1919, defendant deserted his wife and chil-
dren, and went to Akron, Ohio, where he obtained employment with
the Goodyear Tire and Rubber Company. During the next few weeks
he wrote four or five letters to Gladys, the contents of which do not
appear, as they were not introduced in evidence. It does appear, how-
ever, that one letter was delivered to her shortly before the transpor-
tation charged in the indictment. It also appears that about the same
time he told the landlady with whom he boarded in Akron that he was
going back to bring his wife, and probably a cousin.

On the evening of October 18th Gladys went to the home of Thelma,
to which she had sent a suit case containing her personal belongings.
She told her mother that she would attend Sunday school with Thelma
the following day, but left a note pinned to her bed stating that she
had gone away. That same evening defendant appeared at the house
where Thelma lived, spent the night there, and early next morning
helped the two girls carry their baggage to the station, where they
boarded a train for Wheeling. He took the same train, but did not
ride with them. Having missed at Wheeling the connecting train for
Akron, they spent the night at a lodging house in that city, where de-
fendant and Gladys occupied the same room; Thelma sleeping in an
adjoining room. Upon their arrival in Akron the following day, they
all went to defendant's boarding house, later removing to another, where
he and Gladys lived together as husband and wife until his arrest.

Called by the government and examined as a hostile witness, Gladys
testified, in substance, among other things, that because she and Thel-
ma had been unpleasantly talked about where they lived they had long
before planned to go to Akron, that she felt she had been disgraced
at home and wanted to get away, that both she and Thelma paid all
the expenses connected with their journey to Akron, and that defendant
in no wise persuaded or induced her to go there at any time or in any
manner. Her statements in this regard were corroborated by Thelma,
and her mother testified that she had been aware of her daughter's
intention.

It will thus be seen that the vital question was whether there had
been on defendant's part that persuasion and inducement which the
statute denounces, or whether the girl went to Akron of her own will

and desire, without solicitation by defendant, for the reasons stated by her, and in pursuance of a plan which she and Thelma had previously formed. It is enough to say in a word that the circumstantial evidence was ample to take this question to the jury, notwithstanding the positive testimony of the two girls. The trial court was therefore right in refusing to direct a verdict for defendant, and the contrary contention is wholly without merit. Indeed, we should have little hesitation in affirming the judgment, were it not for the following instruction to the jury, which seems to us so erroneous and prejudicial as to require reversal. At the end of a clear and adequate charge, otherwise unobjectionable, the learned judge said:

"The defendant having announced to his landlady in Akron his purpose of going to bring out to his rooms, rented by him, his wife and cousin, if you believe he intended to bring there Gladys Poling and represent her to be his wife, instead of his real wife, then you must find that he, in so carrying out such purpose as disclosed by the evidence, used such aiding and assisting the girl in going, in interstate commerce, as made him liable under this statute, and the fact that she bought her own railroad fare is immaterial, *as is also the fact that she went willingly, in accord with her own purpose and design*."

We have put in italics the closing statement in this instruction, because it covers the point on which the case turns, and virtually tells the jury, as must have been understood by them, that the mere act of defendant in traveling with the girl from West Virginia to Akron, and there having immoral relations with her, although she went entirely of her own accord and without the slightest persuasion on his part, or even against his advice, constituted a violation of the statute, and rendered him liable to its penalties. That this is an erroneous construction of the law has been held by us after full consideration in Welsch v. United States, 220 Fed. 764, 136 C. C. A. 370, and the argument need not be repeated. To the same effect are Biggerstaff v. United States (C. C. A.) 260 Fed. 926, Fisher v. United States (C. C. A.) 266 Fed. 667, and the Caminetti Case, 242 U. S. 470, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168.

From the significant array of circumstances shown by the government the jury may well have found, against her denial, that Gladys went to Akron as the result of defendant's inducement and persuasion; but it was within their province to believe the testimony to the contrary, and, so believing, to return a verdict accordingly. Whether there was such inducement and persuasion should have been submitted to their determination.

The judgment must be reversed, and a new trial granted.

Reversed.