## SLOAN v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. February 12, 1923.)

No. 5713.

**1. Prostitution ⟨⟩1—Immoral purpose must have been formed before state line is crossed.**

Since Mann White Slave Traffic Act June 25, 1910 (Comp. St. §§ 8812–8819), is valid only under the commerce clause of the national Constitution (article 1, § 8, cl. 3), there must, in order to constitute the offense charged, be substantial evidence that the intention to transport the woman for immoral purposes was formed by the parties before they reached the foreign state to which she was transported, since the immoral act itself is exclusively within the jurisdiction of the police power of the state where it was committed.

**2. Criminal law ⟨⟩1144(13)—Testimony of prosecution is accorded strongest probative effect on review of ruling on motion to direct verdict.**

On review of the denial of a motion by accused for a directed verdict, the Circuit Court of Appeals must give the testimony of the prosecution its strongest probative effect, and, if there is any substantial testimony which will warrant a verdict of guilty, the denial of the motion is not cause for reversal.

**3. Prostitution ⟨⟩4—Evidence held not to show immoral purpose was formed before state line was crossed.**

Evidence that accused offered to take a woman, with whom he had previously had illicit intercourse within the state, to visit her sister in another state, where she desired to obtain employment, *held* insufficient to show an intention to transport her for an immoral purpose, though after their arrival in the other state, and a quarrel with her sister, they indulged in intercourse.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

On rehearing. Judgment of the District Court reversed.

For former opinion, see 279 Fed. 562.

Chase Morsey, of St. Louis, Mo., for plaintiff in error.

Eustace C. Wheeler, Asst. U. S. Atty., of St. Louis, Mo. (James E. Carroll, U. S. Atty., of St. Louis, Mo., on the brief), for the United States.

Before LEWIS, Circuit Judge, and TRIEBER and BOOTH, District Judges.

TRIEBER, District Judge. The defendant having been convicted on an indictment charging him with violation of the White Slave Traffic Act of June 25, 1910 (Comp. St. §§ 8812 to 8819), removed the case to this court on a writ of error, and upon a hearing the judgment of conviction was by this court affirmed. 279 Fed. 562. A motion for rehearing was granted.

The contention of counsel for plaintiff in error that transportation of a woman from one state to another for immoral purposes in an automobile is not a violation of the Mann Act of Congress of June 25, 1910, 36 Stat. 825 (8813 U. S. Comp. St. 1916), is untenable. There is nothing in section 2 of the act, which is the section he is charged with

having violated, limiting the transportation to a common carrier, engaged in interstate commerce, as insisted on by counsel. The language of section 2 makes it an offense to "transport or cause to be transported in interstate or foreign commerce any woman or girl for an immoral purpose." Conveying a person in an automobile is as much transportation as if by rail, steamboat, stagecoach, or any other common carrier. The fact that sections 3 and 4 (Comp. St. §§ 8814, 8815) limit the commission of acts of the accused to transportation by "a common carrier in interstate commerce," while section 2 of the act does not contain this limitation, is convincing that Congress did not intend to apply it to a violation of section 2. If defendant's contention is correct, the word "transports" is meaningless, for the railway or other common carriers who transport the woman cannot be charged with transporting or causing her to be transported for immoral purposes, the act sought to be prohibited by this section of the act.

[1] Did the court err in denying the defendant's request to direct a verdict of not guilty? The constitutionality of the act involved has been upheld as a proper exercise of the powers of Congress, solely under the commerce clause of the national Constitution (article 1, § 8, cl. 3). Hoke v. United States, 227 U. S. 308, 320, 33 Sup. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913E, 905. Therefore, in order to constitute the offense charged, there must be substantial evidence that the intention to transport the woman for immoral purposes must have been formed by the parties before they reached the foreign state, to which the woman is being transported. If it did not exist then, but was only formed after reaching the state in which the immorality is committed, it is clearly insufficient to warrant a conviction under the act. The immoral act itself is exclusively within the police power of the state where it is committed. The mere fact that the journey from one state to another, if followed by such intercourse, when the journey was not for that purpose formed in the state from which the transportation was made, cannot be regarded as a violation within the meaning of the act. Van Pelt v. United States, 240 Fed. 346, 349, 153 C. C. A. 272, L. R. A. 1917E, 1135; Fisher v. United States, 266 Fed. 667, 670 (4th C. C. A.). The only evidence as to what took place in the state of Illinois concerning the trip to St. Louis in the state of Missouri, which is the basis of the indictment, is that of the woman Martha Jerden, hereinafter referred to as Martha, and the defendant.

[2] A motion for a directed verdict at the conclusion of all the evidence having been denied by the court, and proper exceptions saved, it is the duty of an appellate court, when reviewing the denial of such a motion, to give to the testimony of the prosecution the strongest probative effect, and if there is any substantial testimony which would warrant a verdict of guilty, the denial of the motion will not be cause for reversal. Disregarding entirely the testimony of the defendant, and giving the testimony of Martha full effect, as the jury evidently did, does her evidence warrant a finding that the journey by the parties from Shafter, in the state of Illinois, to the city of St. Louis, in the state of Missouri, was with the understanding, either express or implied, that it should be for immoral purposes in the state of Missouri?

[3] We have read and re-read the testimony, and it fails to convince that there was any evidence whatever of such an agreement or understanding between her and the defendant. There is not one word in her testimony that the subject of sexual intercourse in St. Louis was ever mentioned in the state of Illinois, but was first broached several hours after they had reached the city of St. Louis. The parties for some time prior to this trip from Shafter to St. Louis had indulged in sexual intercourse in the state of Illinois. It also appears from her testimony that before the trip was taken she had been employed in a store in the city of St. Louis, but had lost her position, and thereupon returned to her home in Shafter; that she was anxious to again obtain employment in St. Louis; that she had a sister living there, a young woman of irreproachable character, who was employed in one of the department stores in the city. She testified that the defendant asked her in Shafter, by telephone, whether she wanted to visit her sister; that she then had in mind that he referred to a visit to her sister living in Carlinville, in the state of Illinois. She asked him if he meant her, and he said, "No, St. Louis." He told her that he was going there on a business trip in his automobile, and, if she wanted to go there to see her sister, he would take her. She agreed to go with him, and on Sunday, October 20, 1918, he called for her in his automobile, and they went to St. Louis. They arrived there about 7 o'clock, p. m., when he took her to the boarding house where her sister was living.

On the trip to St. Louis, a Mr. Harry was picked up by them, and he accompanied them to St. Louis. After they had been some time at her sister's boarding house, Martha, her sister, Mr. Harry, and the defendant decided to take an automobile ride to a restaurant in the country. On their return to the city of St. Louis, and before reaching the house where her sister was residing, where she expected to leave the automobile and stay with her sister, a dispute arose between the defendant and her sister and Mr. Harry, when the defendant ordered them to get out of the car, which they did. It was thereafter, and in the city of St. Louis, that the arrangement for illicit intercourse was made between the defendant and Martha. He took her to a hotel, where they remained all night, and the next evening she returned to her home in Shafter.

There was not a scintilla of evidence by any witness tending to show that any arrangement, agreement, or understanding between the parties for illicit intercourse while in St. Louis was made prior to that time. As stated in Fisher v. United States, supra:

"But the mere fact that a journey from one state to another is followed by such intercourse, when the journey was not for that purpose, but wholly for other reasons, to which intercourse was not related, cannot be regarded as a violation of the statute."

There can be no doubt that the sole object of taking the trip from Shafter to St. Louis was to enable her to visit her sister and to try to obtain employment in a store, as she had been employed some months before. There is nothing in the evidence to show any possible reason why he should have gone to the trouble and expense of taking her to

St. Louis, merely in order that he might have illicit intercourse with her, when he could have done so at home, without taking her to another state, as she testified that she had frequently had such intercourse with him in the state of Illinois, and later took a trip with him from Shafter to Chicago, in the state of Illinois, for the immoral purpose.

The court erred in denying the motion of the defendant to direct a verdict of not guilty. The judgment is reversed.