## ALPERT v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. May 3, 1926.)

No. 297.

1. Prostitution ⬡1—Indictment charging transportation of girl in interstate commerce for immoral purposes by means of automobile charges on offense under section of statute relating to transportation by common carrier (White Slave Traffic Act June 25, 1910, § 4 [Comp. St. § 8815]).

Indictment charging transportation of girl under age of 18 years and of age of 14 years in interstate commerce for immoral purposes "by means of a certain motor vehicle, to wit, an automobile," charges no violation of White Slave Traffic Act June 25, 1910, § 4 (Comp. St. § 8815), since that section applies only to transportation "upon the line or route of any common carrier or carriers."

2. Prostitution ⬡5—In prosecution for transporting girl in interstate commerce by means of automobile for immoral purposes, instruction requiring jury to determine age of girl transported held erroneous (White Slave Traffic Act June 25, 1910, §§ 2, 4 [Comp. St. §§ 8813, 8815]).

In prosecution under indictment charging transportation of girl in interstate commerce by means of automobile for immoral purposes, where court announced that it would consider case as charging violation of White Slave Traffic Act June 25, 1910, § 2 (Comp. St. § 8813), though indictment charged violation of section 4 (Comp. St. § 8815), which applied only to transportation by common carrier, it was error to thereafter give instruction requiring jury to determine age of girl transported, which was immaterial under section 2, though material under section 4.

3. Prostitution ⬡1—That journey from one state to another is followed by illicit intercourse does not result in violation of White Slave Traffic Act, where journey was made for wholly different reasons (White Slave Traffic Act June 25, 1910 [Comp. St. §§ 8812-8819]).

Intent is essential to violation of White Slave Traffic Act June 25, 1910 (Comp. St. §§ 8812-8819), and fact that journey from one state to another is followed by illicit intercourse does not result in a violation of that act, where journey was made for wholly different reasons.

Hand, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of New York.

Charles Alpert was convicted of violating the White Slave Traffic Act, and he brings error. Reversed.

Wahle, Gilbert & Black, of New York City (Charles G. F. Wahle, of New York City, of counsel), for appellant.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The indictment charged the defendant below with a violation of the so-called White Slave Traffic Act of June 25, 1910 (36 Stat. 825, 826 [Comp. St. §§ 8812-8819]), in two counts. The first count was a charge of transporting from Brooklyn, Eastern district of New York, to Pottsville, Pa., in interstate commerce, for immoral purposes, a girl under the age of 18 years, in violation of section 4. The plaintiff in error was acquitted by direction of the court on the first count.

The second count charged that he "did knowingly, willfully, unlawfully, and feloniously persuade, induce, entice, and coerce a certain girl under the age of eighteen years * * * to go in interstate commerce from Brooklyn, in the Eastern district of New York, to Pottsville, Pa.," with the intent and purpose on his part "to persuade, induce, entice, and coerce her, * *. * she being then and there under the age of 18 years and of the age of 14 years, to engage in an immoral practice, to wit, the practice of illicit sexual intercourse, * * *" and "then and there and by means of such persuading, inducing, enticing, and coercing, did knowingly cause, * * * she being then and there under the age of 18 years, to go and be carried from the borough of Brooklyn, city, state, and Eastern district of New York, to and into the said city of Pottsville, in the state of Pennsylvania, as a passenger in and by means of a certain motor vehicle, to wit, an automobile," against and contrary to section 4 of the act in question.

[1, 2] This occurrence was on March 31, 1925, and the young woman in question was born July 3, 1910. After meeting the plaintiff in error in January, 1925, under circumstances which are not material here, she went with him to places of amusement and stayed in the same hotel with him in Brooklyn on April 2, 1925, although occupying separate rooms. Up to March 31, and up

to the time of the motor ride to Pottsville and the occurrence there, she had met him frequently and apparently carried on a courtship, although she said at that time she was engaged to be married to another, and used it as an excuse for not marrying the plaintiff in error.

On March 31, 1925, the plaintiff in error and the young woman went to Pottsville, Pa. She testified that he represented the journey would take but a couple of hours, and that he had some business there with a named person, from whom he was to receive a check. She further said he told her he wanted to marry her while there, and would do so if she consented; also she said there was no suggestion or thought of illicit sexual relation then. When they arrived at Pottsville, plaintiff in error registered in his own name and she as his wife, at the hotel. They occupied separate rooms. She testified: "Charles said he was going to go and occupy another room, and when he left me, as he always did, he told me he would see me in the morning." About half an hour later, she says he entered her room, slapped her across the face, held her mouth, and forced her to have sexual intercourse with him; but withal she stayed with him the rest of the night, without cry or complaint to any person. Her first suspicion that plaintiff in error wanted to have sexual intercourse with her was when he raped her this night. What occurred may have breached the criminal law of Pennsylvania. At the end of the government's evidence, the plaintiff in error moved for the direction of a verdict of acquittal, and, after denial, the plaintiff in error rested his case. Thereupon the court announced that he would confine the jury's consideration of the case to the second count of the indictment, which he said charged the defendant "with transporting the girl himself, because there is no evidence here that he caused it to be done by any other means than the use of his own car in transporting her."

Section 2 of the Act of June 25, 1910, makes it a crime to transport "any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice," and one so doing shall be deemed guilty of a felony. Section 4 of the same act makes it a felony to "knowingly persuade, induce, entice, or coerce * * * any woman or girl under the age of 18 years

from any state or territory * * * with the purpose and intent to induce or coerce her * * * to engage in prostitution or debauchery, or any other immoral practice, and shall in furtherance of such purpose knowingly induce or cause her to go and to be carried or transported as a passenger in interstate commerce upon the line or route of any common carrier or carriers."

But, after the withdrawal of the second count, the trial judge in his charge to the jury stated as to the statute: "What the statute denounces, and what is the gravamen of this offense, is the transporting, conveying, inducing, or enticing of a female, in this case, to be carried in interstate commerce." And, after announcing that he would direct his charge to the "second count in the bill," stated that any one who "furnishes a vehicle with the intent and view that, on reaching the destination across the state line or in the other state, he shall there engage in some immoral practice, sexual or otherwise," is guilty. He thereupon said:

"Taking up the verdicts that may be rendered: There are two sections of the statute which denounce this crime, one providing for certain penalties in the event the female is under 18 years of age, and the other certain penalties, or different penalties if she be over 18 years of age. In other words, that is a matter which the court, in passing sentence, may take into consideration, and may increase or diminish the sentence as it finds proper."

And further:

"Now, in order to convict the accused as charged under this second count, it would be necessary for you to find and you would have to determine the fact in the same sense as all other facts in the case; that is, beyond a reasonable doubt, that if, first, the witness was under 18, and, secondly that the accused knew or should have known, that the circumstances were such, from the appearance of the girl, her statements or otherwise, or any other facts in the case, that pointed or indicated that he knew or must under the circumstances have known that she was under 18 years of age. If you find as a result of your deliberation that she is under 18 years of age, and that it was apparent he should have known, or any other fact or circumstance in the case brought that knowledge to the accused in this case, so that he had a guilty knowledge of the fact when he committed the act with which he is charged, if he did commit it, then your verdict should be guilty as charged. On the other hand, if you should reach the con-

clusion that the young lady has the appearance or is above the age of 18, or the circumstances were such that this accused honestly believed and had a right to believe that she was above the age of 18, then you give him the benefit of that doubt, and your verdict should be not guilty as charged, but guilty of transporting a female as charged, above the age of 18 years; in other words, that is necessary in order that the court may impose the proper penalty or sentence, limitations upon it one way or the other. If you find she is under 18, that the accused knew it, or should have known it, had reasonable grounds to know it, the verdict is, guilty as charged. If you think appearances, or any other circumstance or fact in the case, reasonably led him to believe, and that he did believe, that she was above 18, and you find it to be the fact, justifying a verdict of guilty, you should bring a verdict of guilty of transporting as charged a female above the age of 18; in other words, that is the only difference in the determination of that question."

This charge was erroneous. Section 4 of the act, as stated above, has application only where there is transportation as a passenger in interstate commerce upon a line or route of any common carrier or carriers. It has no application to transportation by automobile.

While announcing, at the end of the evidence, just before the charge, that the court would consider the case as charging a violation of section 2 of the Act of June 25, 1910, the court proceeded to submit the case to the jury as one under section 4 of the same act. This was as charged in the indictment. This charge of the indictment (count 2) did not state a crime, and it could not prevail as against a motion to dismiss, for there was no allegation of transportation by an interstate common carrier, and the evidence was that an automobile was used.

The jury returned a verdict stating, "We, the jury, find the accused guilty of transporting a female in interstate commerce, as charged in the indictment, but with the belief or reason to believe that she was above the age of 18 years," which indicates that the jury in their deliberations were involved in the consideration of the question of age. If the charge was laid as a violation of section 2, the age of the woman was of no importance; but the court did not confine the jury question to guilt under that section. He allowed them to consider the charge as under section 4 also. He did not adhere to his ruling that he would confine the jury's consideration to violations under section 2. Since the second count of the indictment alleged no crime, it was error to allow the jury to consider that charge. The jury's verdict illustrates the confusion that followed.

[3] The only evidence of what took place at the hotel in Pottsville was that given by the young woman, and whether or not the plaintiff in error intended to indulge in sexual relations before leaving the state of New York is left entirely to inference. There is no evidence of any arrangement between the couple or understanding between them for illicit intercourse after going to Pennsylvania. The fact that a journey from one state to another is followed by such intercourse, where the journey was not for that purpose, but wholly for other reasons, cannot be regarded as a violation of that act. United States v. Fisher (C. C. A.) 266 F. 670. To justify conviction, there should be convincing evidence of the intention to transport the woman for immoral purposes, and that it was formed before the woman reached the state to which she was being transported. If the intention referred to did not exist before the woman reached the state to which she was being transported, but was formed after reaching the state in which the illicit relationship is had, conviction under the act cannot be had. Sloan v. United States (C. C. A.) 287 F. 91. Sections 3 and 4 limit the commission of acts of the accused to transportation by common carrier in interstate commerce, and section 2 of the act does not contain this limitation, which indicates that Congress did not intend that section 4 should apply to transportation by automobile. Sloan v. United States, supra.

It was error to allow the jury to speculate as to guilt under a count that stated no crime.

Judgment of conviction reversed.

HAND, Circuit Judge, dissenting, without opinion.