## UNITED STATES v. GRACE.
### No. 64.

Circuit Court of Appeals, Second Circuit.
Nov. 5, 1934.

Samuel M. Ostroff, of New York City (Samuel M. Ostroff and H. Herman Haimowitz, both of New York City, of counsel), for appellant.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y. (Vine H. Smith, Asst. U. S. Atty., of New York City, and Emanuel Bublick, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The defendant has been convicted of violation of the Mann Act (White Slave Law § 2, title 18, U. S. C. § 398 [18 USCA § 398]). He is a bishop of the "House of Prayer for All People," and was charged, within the Eastern district of New York, with having unlawfully, willfully, and feloniously transported a young woman in interstate commerce for the purpose of prostitution and debauchery and for other immoral purposes. It is charged in the indictment that on October 16, 1932, he transported her from the Eastern district of New York to Washington, in the District of Columbia, in an automobile, with the intent to induce, entice, and compel her to practice illicit sexual intercourse at Washington, in the District of Columbia.

The government called two witnesses, the complainant and her sister. There was evidence from which the jury might have found that the complainant came from Philadelphia, Pa., to the borough of Brooklyn, New York City, with the bishop of her church to give testimony in an ecclesiastical trial held in Brooklyn and over which the appellant presided. After the trial, she went back to Philadelphia with the appellant in his automobile, a chauffeur driving. She testified that while motoring through New Jersey the appellant attempted to have intercourse with her on the floor of the car, but that he was not successful. They continued to Philadelphia, where she remained for two weeks. During that time the appellant took immoral liberties with her person, but she did not have sexual intercourse there. After two weeks, the appellant asked the complainant to go to Baltimore to play the piano for him. She

went there with him in his car which was driven by the same chauffeur. No attempt was there made to have sexual relations with her. After a short time in Baltimore, they continued to Washington, where she stopped at appellant's home. He gave her $5, and said: "I want you to come up to my room, and I mean come up. I am going to leave the door unlocked." That night she went to appellant's room, entered his bed, and remained with him all night, having sexual relations with him. This is the only occasion on which such relations were had.

Complainant's sister testified that, after the complainant became pregnant, appellant on one occasion said that "if the baby looks like me, I will take him." From time to time the appellant gave sums of money to the sister for the care of the complainant.

There is no evidence that when they left Brooklyn the appellant had any plan or purpose to have sexual relations. It was two weeks thereafter when they reached Washington. The statute makes it an offense only when one knowingly transports in interstate commerce a female "for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice." Title 18, U. S. C. § 398 (18 USCA § 398). Whatever may have been the offense in Washington, the question presented to us is whether there was evidence which would permit a jury to find, beyond a reasonable doubt, that the appellant had this criminal intent at the time they left the Eastern district of New York where the indictment was found. In Sloan v. United States (C. C. A.) 287 F. 91, at page 92, the court said: "In order to constitute the offense charged, there must be substantial evidence that the intention to transport the woman for immoral purposes must have been formed by the parties before they reached the foreign state, to which the woman is being transported. If it did not exist then, but was only formed after reaching the state in which the immorality is committed, it is clearly insufficient to warrant a conviction under the act."

And further: "The immoral act itself is exclusively within the police power of the state where it is committed. The mere fact that the journey from one state to another, if followed by such intercourse, when the journey was not for that purpose formed in the state from which the transportation was made, cannot be regarded as a violation within the meaning of the act. Van Pelt v. U. S.,

240 F. 346, 349, 153 C. C. A. 272, L. R. A. 1917E, 1135; Fisher v. U. S., 266 F. 667, 670 (4th C. C. A.)."

No intent is shown by any evidence that the appellant induced the complaining witness to leave the Eastern district of New York to go to Washington for the purpose of engaging in this immoral relationship. The jury should not have been permitted to speculate and reach a conclusion that he had the necessary criminal purpose and intent required to be shown by the statute. The complaining witness voluntarily came to Brooklyn, remained there, and returned to Philadelphia, where she was to live. Subsequently she went to Baltimore and then to Washington, and, assuming that the appellant had a criminal purpose in mind at the time of the commencement of these journeys, such offense or offenses were not committed within the Eastern district of New York. Alpert v. United States, 12 F.(2d) 352 (C. C. A. 2); Biggerstaff v. United States, 260 F. 926 (C. C. A. 4).

■■ The statute makes the intent and purpose an element of the crime, and, if the journey was planned with no immoral purpose at the time, no crime was committed no matter what may have occurred thereafter. It is the immoral purpose which renders such interstate commerce criminal. The immoral relationship, standing alone, unconnected with interstate commerce, does not violate the act. Drossos v. United States (C. C. A.) 16 F.(2d) 833; Sloan v. United States (C. C. A.) 287 F. 91; Fisher v. United States (C. C. A.) 266 F. 667; Gillette v. United States (C. C. A.) 236 F. 215. Inducing a girl to go from one state to another with any other purpose, except the formed intent at the outset, is insufficient to constitute a violation of the statute. Alpert v. United States, supra; Welsch v. United States (C. C. A.) 220 F. 764; Sloan v. United States, supra.

■ The alleged assault attempted in the state of New Jersey as the complaining witness and the appellant were motoring to Philadelphia, although highly incredibile, but which may have been accepted by the jury, we think is insufficient to spell out a criminal intent on the part of the appellant when he left the Eastern district of New York. Both appellant and the complaining witness had come to Brooklyn concededly for purposes other than those now charged and were returning to Philadelphia when they left the Eastern district of New York. Whatever occurred thereafter did not constitute a violation of the criminal statute which could be said to have

been committed within the Eastern district. The motion made to direct a verdict of acquittal should have been granted.

Judgment of conviction reversed.