## UNITED STATES v. ORIOLO.
### No. 10375.

District Court, E. D. Pennsylvania.
March 29, 1943.

Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., for the United States.

Milton S. Leidner, of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

The defendant was indicted for alleged violation of the White Slave Act of 1910 (the Mann Act) 18 U.S.C.A. §§ 398, 399.

At the conclusion of the government's proofs, the defendant demurred to the evidence and the United States Attorney joined in the demurrer. Accordingly, I discharged the jury and must now adjudge the defendant either guilty or not guilty.

The substance of the indictment is that the defendant knowingly, wilfully, unlawfully and feloniously caused Elizabeth George to be transported over the lines of the Pennsylvania Railroad from Atlantic City, in the State of New Jersey, to Philadelphia, in the State of Pennsylvania, for the purpose of prostitution and debauchery; with the intent and purpose to induce and compel her to become a prostitute and practice prostitution, and that he did thus persuade, induce and entice her.

■ The testimony, uncontradicted because no defense was offered, established that the defendant and the woman met in Philadelphia and that, after some preliminaries, he took her to the Clinton Hotel in Philadelphia, where he registered with her as man and wife under the name of De Marco on July 6, 1942. There the woman worked for defendant as a prostitute. On July 19, 1942, the couple undertook an automobile journey to Atlantic City for a day's outing. There they were arrested and their automobile was held by the authorities. They took the train back to Philadelphia on July 20, 1942, and within about fifteen minutes from the time the return journey on the train commenced, and while the train was still, of course, in the State of New Jersey, defendant informed the woman that she would have to resume the business of prostitution in Philadelphia to enable him to pay the $500 fine that had been imposed in Atlantic City. Upon their arrival in Philadelphia the woman worked for the defendant as a prostitute and turned over her earnings to him.

The government contends that these proofs establish violation of the Act. In this contention the government relies exclusively on the journey from Atlantic City to Philadelphia, and not on the prior journey from Philadelphia to Atlantic City.

The defendant, in contending that the evidence does not establish an offense, argues that the picture presented is that of an act committed after an interstate journey commenced, and that an act committed at such a time is not within the purview of the statute. I must reject that contention.

Under the defendant's theory, the statement made by him to the woman about fifteen minutes *after* the train journey to Philadelphia commenced is the criminal act upon which a verdict of guilty must be predicated; and he urges that any such verdict must be predicated upon a criminal act committed *prior* to the commencement of the journey. For this proposition he cites United States v. Grace, 2 Cir., 73 F.2d 294, which holds that one who induces a female to go from one State to another, with any other purpose except an immoral intent completed at the outset of the journey, is not guilty of a violation of the Mann Act.

As I have indicated, however, the words spoken by the defendant to the woman while on the train constitute only one phase of the evidence from which the violation may be inferred.

In this case the woman had worked as a prostitute for the defendant while in Philadelphia at a time prior to the Atlantic City journey, and had turned over the money she earned from her debauchery to him. While the couple were in Atlantic City, the $500 fine was imposed on the defendant. He then brought her back to Pennsylvania on the train, paying for both her transportation and his, and when they returned to Philadelphia she resumed the practice of prostitution at the Clinton Hotel and again turned the money over to him.

■ These facts, conjoined with the words spoken by the defendant to the woman on the train journey, certainly present a picture from which a jury could properly infer that the defendant transported the woman over State boundaries in order that she might again work for him as a prostitute; but the fact that the defendant specifically expressed his intention thus to have her work for him, while both were on the train, is certainly not conclusive that the intent was not formulated until aft-

er the journey had commenced. Spoken words may evidence an intent formulated either prior or subsequent to the time that they are uttered, as well as one formulated at the precise time they are uttered. It is for a jury to decide the time when the intent was formed, both from the spoken words and any other relevant, material and competent factors in the evidence.

■ Our own Circuit Court of Appeals has ruled upon this precise point. In United States v. Reginelli, 3 Cir., 133 F.2d 595, 598, the court said: "True enough, the interstate transportation which the Mann Act makes penal is only such as is undertaken or initiated for the purpose of effecting, aiding, or facilitating prostitution, debauchery, or other immoral practices. Fisher v. United States, 4 Cir., 266 F. 667, 670. But the purpose for which the interstate transportation is enlisted may be inferred from the conduct of the parties within a reasonable time before and after the transportation. See Neff v. United States, 8 Cir., 105 F.2d 688, 691. In Grayson v. United States, 8 Cir., 107 F.2d 367, 370,—a prosecution under the Mann Act,— the Court of Appeals had no doubt that 'inferences as to intent may be gathered from subsequent acts and conduct.'"

A case strongly analogous to the instant case upon the facts is Corbett et al. v. United States, 9 Cir., 299 F. 27, at pages 28, 29, from which I quote extensively:

"Error is assigned upon the refusal of the court to instruct the jury to the effect that, if defendants were living in Boise and Nora Bishop was transported to Spokane and returned to Boise, but both defendants intended, when she left Boise, that she should return to that place, and that Corbett furnished her the money for her transportation, defendants should be acquitted, although it might be found that, prior to and at the time of Mrs. Bishop's departure for Spokane and of her return to Boise, they had had illicit relations. Error is also assigned because of the refusal to instruct that, if it were found that Corbett at the time the woman left Boise arranged with her to furnish the money, and did furnish the funds for her transportation to Spokane and return to Boise, acquittal should be had, even if the jury found that, prior to and at the time of her going from Boise to Spokane and return, defendants held illicit relationship, and even if it were found that Corbett had in mind at the time of furnishing the transportation that there would be a continuance of prior illicit intercourse.

"Under the statute cited, to justify a conviction, there must be convincing evidence that the intention to transport the woman for immoral purposes was formed before the woman reached the state to which she was being transported; that is, if the intention just referred to did not exist before the woman reached the state to which she was being transported, but was only formed after reaching the state in which the illicit relationship is had, conviction under the act cannot be had. Sloan v. United States [8 Cir.], 287 F. 91. It is not the act of illicit relationship that is punishable for that is clearly within the police power of the state where the act has been committed; but it is the transporting of the woman in interstate commerce for debauchery or other immoral purposes that is condemned.

"With this understanding of the law, the vital point is: What was the intent and purpose of Corbett when, with the money which he had sent to Mrs. Bishop, she was transported from Spokane to Boise? If it was for the immoral purposes alleged, the conviction of Corbett under the two counts was proper. It is plain that the trip made by Mrs. Bishop from Boise to Spokane was to see her children, and for no other purpose; but the trip from Spokane to Boise, made a month later, is the one described in the indictment, and is distinct from the journey to Spokane. Corbett gave Mrs. Bishop the money for the trip, which the evidence goes to show was taken in response to Corbett's express request, and, in the light of circumstances surrounding the conduct of the two after her arrival at Boise, it was for the jury to say what the intention and purposes of Corbett were in the transportation. The requested instructions were confusing, in that they were drawn apparently upon the assumption that conviction of Corbett was sought for having transported Mrs. Bishop from Boise, Idaho, to Spokane, Wash., for immoral purposes, as well as from Spokane to Boise, whereas the charge was confined to the January 10th transportation from Spokane to Boise. In the absence of the instructions which were given, it is to be presumed the law was correctly stated to the jury."

Defendant attempts to distinguish this case upon the ground that in the case at bar the defendant planned a "unitary cir-

cular journey" by automobile to Atlantic City and back, and that the fact that it was "split into two tangents" by the Atlantic City police, so that the return journey was performed by train instead of by automobile, robs it of analogy to the case cited. I fail to see any important distinguishing factor in the enforced change of transportation facilities. One may violate the Act by transportation by automobile as well as by railroad.

I am convinced, under the testimony, that the defendant, in transporting the woman from New Jersey to Pennsylvania— which transportation he paid for—did so with the intent to debauch her and to have her practice prostitution for his venal gain, and that he thereby violated the Mann Act.

In accordance with what has been stated, I adjudge the defendant guilty and direct him to appear on April 12, 1943, at 11 A.M., for imposition of sentence.