### UNITED STATES v. MITCHELL.
### No. 318.

Circuit Court of Appeals, Second Circuit.

Nov. 8, 1943.

FRANK, Circuit Judge, dissenting.

———◆———

For former opinion, see 137 F.2d 1006.

John C. Hilly, Asst. U. S. Atty., of New York City, for the United States.

Peter J. Haberkorn, of New York City, for defendant.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

█ The parties have now shown us that the abbreviated narrative record was erroneous in that the incident when during trial defendant attempted to dismiss his attorney occurred not after the completion of his wife's testimony, but just after the first witness for the prosecution had been sworn and before the actual taking of testimony had begun. It now appears that a jury was impaneled late on Friday afternoon, March 13, 1942, and that the incident occurred just as trial was resumed at noon the following Monday. An objection so made at this early stage of a trial may well be more favorably viewed than one made later after the prosecution has disclosed its case; indeed, our opinion states as much. Even so, when a jury case is already on trial in a district with a crowded calendar such as obtains in the Southern District of New York, a continuance for the obtaining and indoctrination of new counsel would be disruptive of the court's business and could not be claimed under the circumstances except for rather exceptional cause. Hence, so far as appears here, the most that defendant could reasonably have expected would have been the getting rid of his attorney after proper warning by the court of the consequences and the dubious privilege of proceeding unaided. But we do feel that the court was too hasty, in view of the circumstances here presented, in stopping the defendant so quickly and, indeed, in not inquiring as to whether there was any reason for the demand.

A majority of this court nevertheless feel that no reversal should result, because the complete transcript now presented to us discloses both what was motivating the defendant and the fact that in reality the trial cleared up his objection. On cross-examination of the wife, defendant's counsel went extensively into her relations with other men, notably with one Paul Bascomb, and questioned her as to entries

in her diary, letters from men, and a photograph album, and intimated by his questions that these had been taken by the "Federal men." The United States Attorney then said (referring particularly to the letters, although his statements obviously included all this material) that he knew nothing about them, that defendant's counsel had spoken to him about them, and that the agent had said they were not among the belongings, but that he would communicate further with the agent again that night. The court then directed the United States Attorney to produce whatever the agent had. Later that day defendant on his direct examination made extensive references to this material, and objected because his lawyer had not produced the diary in court and had not sought a "court order" when he found the landlady would not let him take anything from the room. Defendant said: "Do you remember that diary was not produced in this court and I said to you I refused to accept this man as my attorney, but I didn't tell you the reason why, so no diary and no letters in my behalf concerning this case have been produced here, just me against three witnesses with no chance at all. That is my story, your Honor."

That night the United States Attorney directed an F. B. I. agent to go to the apartment and to secure the diary at a place suggested by defendant's attorney. The next day at trial it was delivered to defendant's attorney, a letter and post cards to the wife were put in evidence by the prosecution, and the diary by the defense, and the wife was recalled and cross-examined as to the diary. No request was made to the court to adjourn the case to enable defendant to prepare cross-examination of his wife. We are convinced that every advantage which could accrue to defendant from the diary was obtained—perhaps even more dramatically because of the attention thus focused upon it. There seems no just ground for criticism of either counsel that the diary was not picked up earlier; nor would its earlier possession have led to further preparation of the case, for the material in it, even the name and identity of Bascomb, had long been known to defendant. It is now more than ever clear that defendant's defense was adequately presented, down to the very detail which initially had disturbed him. No additional line of defense or other evidence is now suggested.

After all, a trial should be viewed practically with the purpose of discovering if the ends of justice have actually been achieved. Had the court permitted defendant to make his explanation, the matter of the diary would have been cleared up that much earlier in the day; but it is hardly conceivable that any other result would have followed. With the point as to the diary disclosed and taken care of, the court would certainly have discouraged defendant from following the well-nigh suicidal course of attempting to go on with the case alone. His substantial rights having been actually protected, reversal is not justified. 28 U.S.C.A. § 391.

■ Attack is further made upon the sufficiency of the evidence; but the fact that defendant actually lived off his wife's earnings was well established, and there was evidence for the jury from which his intent so to use her, formed before coming to New York, could be deduced from the various incidents recounted in the original opinion as to his desire even then to obtain money through her and by these means. Rehearing, therefore, having been had, the judgment previously entered is confirmed, and the opinion, except as supplemented herewith, is reaffirmed. The motion for bail is denied.

FRANK, Circuit Judge (dissenting).

We originally heard the case on a narrative record. We now have before us the entire transcript which, in important respects not noted in the majority opinion on this rehearing, virtually destroys, I think, the reasons given by my colleagues in their original majority opinion. For that opinion rested on these propositions: (1) The case against the defendant was "strong." (2) The defendant's request at the trial to be relieved of his lawyer was made after most of the evidence constituting the government's "strong" case had been concluded, so that his request was in the nature of a trick and, if granted, would have caused a mistrial of a case substantially complete; (3) the defendant gave no adequate reason for his request. It now appears, however, from the transcript, that (1) the government's case, even when complete, was far from "strong," (2) that the defendant's request was made before one iota of evidence had been introduced, and (3) that there were good grounds for this request.

First, as to the "strong" case. The crime charged is transportation of defendant's wife from New Mexico to New York for the purpose of having her engage in prostitution. The testimony of the wife supplies the sole basis for a verdict as to defendant's illegal purpose in this transportation. Important details of her testimony on this crucial issue were not included in the narrative record but were first disclosed in the transcript from which it now appears that she testified as follows: The defendant, on three occasions in California, unsuccessfully tried to induce her to engage in prostitution for his financial benefit. The last of those three occasions was sometime in April 1941, when he was in jail (having been indicted for the possession of marihuana) at which time he wrote her that he needed $100 for a lawyer. But these three incidents occurred at least five months before she married defendant (because she loved him) in October 1941 in Albuquerque, New Mexico. Several times, from February to April he had asked her to marry him, and in September or the early part of October, he had written her from Albuquerque again proposing marriage. They were married on the day of her arrival in Albuquerque. As she wished to go to New York, she asked defendant to take her there. He gave up his job and they left for New York the day after the marriage. They had no funds except some $600 which she had given him. While they were in New York he earned nothing. But at no time after April 1941 until November 1941—three weeks after their arrival in New York—did he suggest that she become a prostitute. She complied with the suggestion then made.

Taking his wife's testimony as true, the case against defendant must rest entirely on inference: Because, five months be-fore their marriage and the transportation to New York, he had several times suggested that she become a prostitute for his financial benefit, because some three weeks after their marriage and trip from Albuquerque to New York—or approximately six months after his original suggestions—he again made such a suggestion, and because he gave up his job in Albuquerque and earned no money in New York, it is inferred that his purpose in transporting his wife to New York was to have her there become a prostitute.

Somewhat hesitatingly I agree that there was just enough evidence from which such an inference could reasonably be made by the jury. But it is surely impossible to say that a case, founded solely on such an inference, is at all "strong."[1] The fact that it is not, renders distinctly pertinent the ruling in Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 463, 86 L. Ed. 680, where the court reversed a conviction because a defendant was not properly represented by counsel. There the court said that the case against Glasser "is not a strong one," since it "depends in large part * * * upon a development and collocation of circumstances tending to sustain the inferences necessary to support the verdict." The court went on to say: "In all cases the constitutional safeguards are to be jealously preserved for the benefit of the accused, but especially is this true where the scales of justice may be delicately poised between guilt and innocence. Then error, which under some circumstances would not be ground for reversal, cannot be brushed aside as immaterial, since there is a real chance that it might have provided the slight impetus which swung the scales toward guilt. * * * To preserve the protection of the Bill of Rights for hard-pressed defendants, we indulge every reasonable pre-

---

[1] Cf. Sloan v. United States, 8 Cir., 287 F. 91, 92; Alpert v. United States, 2 Cir., 12 F.2d 352, 354; United States v. Grace, 2 Cir., 73 F.2d 294, 295. The case against the defendant is further weakened by the following facts now fully appearing for the first time from the transcript: Defendant's wife testified that she knew nothing about the circumstancs which led to defendant's arrest and that she had never complained to the F.B.I. that her husband was causing her to commit acts of prostitution. When the F.B.I. witness was subsequently on the stand, one of the jurors asked "On whose charge was the defendant arrested?" The government's lawyer objected, stating "That is not material here," to which the juror replied "It is to me." The trial court then stated "I tell you as a matter of law that it doesn't make any difference. You take the law from me." Plainly the juror's question was proper and should have been answered, for it might well have shown that the wife testified falsely, and this might have affected her credibility, in a case in which the husband's guilt turned on inferences drawn solely from her testimony.

sumption against the waiver of fundamental rights. * * * The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

In deciding the instant case, which is obviously none too "strong," the following facts are therefore of importance: When defendant first asked to be relieved of his lawyer, it was on the ground that he could not afford to pay his fees. The lawyer then asked permission to withdraw. The trial judge granted this request, but promptly assigned that same lawyer to represent defendant without compensation. With this background, there resulted a lawyer-client relation not unlikely to be strained and at best not too fortunate for defendant.[2] After this relation had endured for several days, defendant made a second request that that lawyer be discharged. The second request—so we now learn from the transcript—was made before a single witness testified.[2a] Giving defendant no opportunity to state his reasons for this request, the trial judge, in the presence of the jury, branded it as an improper "demonstration" and denied it, thus forcing that lawyer upon the defendant.

According to the majority opinion on rehearing, those facts are of no importance because, it is said, the defendant subsequently, on cross examination, explained that the reason that he had desired to be relieved of this lawyer was that the latter had not been diligent in procuring a diary which had been kept by the defendant's wife; because that diary was procured by the lawyer from the government the next day; because no request was then made on behalf of the defendant for an adjournment to enable him to prepare for cross examination of the wife on the basis of that diary; and because, it is said, the defendant's lawyer then did cross examine her effectively, using that diary. For these reasons, according to my colleagues, no substantial harm to the defendant resulted

from being forced to accept a lawyer with whom he was dissatisfied.

Such reasoning, I think, does not comport with the ruling in Glasser v. United States, supra. Since this is a case where "the scales of justice" were "delicately poised," the error "cannot be brushed aside as immaterial." In such circumstances, defendant's right to have the assistance of "counsel of [his] own choosing" is "too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." My colleagues are indeed indulging here in "nice calculations." In the first place, the record by no means shows that the only reason for defendant's dissatisfaction with his lawyer consisted of the failure of that lawyer to procure the diary; the most that can be said is that that lack of diligence was one of the factors creating in defendant a distrust of his lawyer which no client should entertain for his legal adviser. That the diary first became available to defendant when a substantial part of the evidence was in, would, as my colleagues intimate, have been an appropriate ground for asking "the court to adjourn the case to enable defendant to prepare cross examination of his wife." But, since defendant had been peremptorily denied the right either to try his case for himself or to obtain other counsel, the failure to ask for such an adjournment—a failure which my colleagues count against defendant—cannot be ascribed to him but must be ascribed to a lawyer imposed upon defendant against his will by the trial judge.[3] Defendant, in his application for rehearing, suggests that, had his lawyer, through diligence, procured the diary before the trial, it would have been possible, by following leads thereby supplied, to have assembled other facts contradicting the wife and affecting her credibility. It is certainly making a "nice calculation" as to the amount of prejudice to say, as my colleagues do, that there is nothing to this point, and that defendant's case was as well handled by the attorney imposed upon

---

[2] Cf. People v. Thompson, 205 App. Div. 581, 199 N.Y.S. 868, 870.

[2a] The suggestion of my colleagues that the calendar was so "crowded" that a continuance would have been "disruptive of the court's business" is not borne out by the actual facts of the instant case; Defendant was indicted on Feb. 20; he was arraigned and pleaded not

guilty on March 5, and the trial of the case was completed on March 17, all within a period of twenty-five days.

[3] Even in civil proceedings, we have held that a party should not be obliged to be guided by a lawyer not satisfactory to him. In re Mandell, 2 Cir., 69 F.2d 830.

him by the court as it would have been by the defendant himself or by some lawyer satisfactory to him. That preparation in advance of trial by a lawyer satisfactory to a defendant is important, see Powell v. Alabama, 287 U.S. 45, 60, 71, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Johnson v. Zerbst, 304 U.S. 458, 463, 58 S.Ct. 1019, 82 L.Ed. 1461; Glasser v. United States, supra; Rutledge, J., in Wood v. United States, 75 U.S.App.D.C. 274, 128 F.2d 265, 271, 141 A.L.R. 1318.