Catherine Louise **HARMS** and **Ruth** Twisdale Cousins, Appellants,

v.

**UNITED STATES of America,**
Appellee.

No. 7943.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 7, 1959.

Decided Nov. 20, 1959.

Robert G. Doumar and Frederick T. Stant, Norfolk, Va., for appellants.

John M. Hollis, U. S. Atty., Norfolk, Va., for appellee.

Before HAYNSWORTH and BOREMAN, Circuit Judges, and FIELD, District Judge.

FIELD, District Judge.

Appellants, Harms and Cousins, who are sisters, along with one, Connie Jean Day, were named as defendants in a five count indictment charging violations of the White Slave Traffic Act. Harms was charged in each of the first four counts with substantive offenses, the first count charging her with violation of 18 U.S.C. § 2423, involving a minor female, Sandra Lee Ulrich. The second count charged her with a violation of 18 U.S.C. § 2422, alleging the inducement of Josephine Bruno. The third and fourth counts charged similar violations of 18 U.S.C. § 2422, involving Linda Fay Ponder and a woman named therein as Ann Miller, respectively.

The fifth count which named Cousins and Day, along with Harms, as defendants, charged a conspiracy under 18 U.S.

C. § 371 to commit offenses in violation of the sections above referred to covering the period from November, 1955, to the date of the indictment.

At the trial, the Court acquitted the defendant Harms on the first count of the indictment upon the motion of the Government. At the conclusion of the Government's evidence, the Court granted defendant's motion for judgment of acquittal as to the fourth count as well as the motion for acquittal of the third defendant, Connie Jean Day, on the fifth count.

The jury returned a verdict of guilty on the second, third and fifth counts as to the defendant, Harms, and a verdict of guilty on the fifth count as to the defendant, Cousins. The Court denied appellant's motion to set aside the verdict and entered judgment of conviction of both defendants from which they have appealed.

With reference to the conviction of the appellant Harms on the second count, it is contended that there was not sufficient evidence to show that Harms knowingly exercised the requisite persuasion or inducement of Bruno to travel in interstate commerce. It is further contended that it was essential that the Government show that Harms either directed or knew that the victim, Bruno, would travel by common carrier. The evidence indicated that Bruno and Harms had become acquainted in 1955 and from that time up until January, 1957, Bruno had worked as a prostitute for Harms in Norfolk on several occasions. In November, 1956, Bruno left Norfolk to return to New Jersey with the understanding that she might return to Norfolk to resume her work there in January. On January 2 or 3, 1957, Harms made a telephone call to Bruno in Atlantic City, New Jersey, asking her to return to Norfolk and it was agreed that Bruno would come to Norfolk on January 7, 1957. On that date, Bruno traveled to Norfolk by interstate air line carrier, and, after her arrival, engaged in acts of prostitution in establishments maintained by Harms.

■■ Under this evidence, we feel that the conviction of Harms on the second count unquestionably should be affirmed. The evidence set out above of the telephone invitation from Harms to Bruno and her response in making the interstate trip was sufficient to sustain the jury's finding that Harms effectually induced or persuaded Bruno to make the trip. McGuire v. United States, 8 Cir., 152 F.2d 577; La Page v. United States, 8 Cir., 146 F.2d 536, 156 A.L.R. 965. The fact that Bruno had previously expressed the desire to return to Norfolk or that she paid her own fare, is immaterial in view of the other evidence and the jury's finding thereon. United States v. Reed, 2 Cir., 96 F.2d 785.

■ Nor do we feel that it was essential that the Government show that Harms directed or knew that Bruno would travel by interstate carrier. Having shown the knowing inducement or persuasion of Bruno to come from New Jersey to Virginia and the fact of the resultant trip by interstate carrier, the Government had covered the essential elements necessary to justify a conviction under Section 2422. It was not necessary for the Government to go further and attempt to show that Harms knowingly caused the victim to travel by common carrier either by direction or knowledge that the victim, Bruno, would use that mode of transportation. "Cause" is a word of very broad import and its meaning is generally known. See United States v. Kenofskey, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836. The knowing persuasion to make the interstate trip, of course, must be shown with some degree of particularity, but once the knowing persuasion has been shown, if the trip by interstate carrier follows, the offense is complete. In considering the comparable statute (18 U.S.C. § 399) prior to the revision of the Criminal Code in the case of United States v. Saledonis, 2 Cir., 93 F.2d 302, 304, the Court stated:

"It is also suggested that there must be some direct act showing an intent on the part of the inducer

that the transportation shall be by common carrier. This section does not say so, but plainly says that one who induces and who shall 'thereby knowingly cause' interstate commerce by common carrier is guilty of the offense if such transportation follows: An affirmative directive act is not involved. The inducement in and of itself, without consideration of intent and with no further direct act, is the moving cause of what follows. The inducement may be any offer sufficient to cause the woman to respond. The inducement sets in motion the successive acts that constitute the crime. It is unnecessary to show control of the medium of transportation by the inducer. It is sufficient if the accused knows or should have known that interstate transportation by common carrier would reasonably result and if it does."

We agree with the above language to the effect that the requisite inducement is any offer sufficient to cause the woman to respond, and that since the appellant knowingly induced or persuaded Bruno to make the trip then she "knowingly caused" Bruno to travel by interstate carrier within the meaning of the statute.

The evidence with respect to the third count involving Linda Fay Ponder presents a different situation. As to this count the evidence shows that sometime prior to January 21, 1957, Ponder made a call from Detroit, Michigan, to Harms in Norfolk, asking Harms if she could come to Norfolk to work for her as a prostitute. After questioning her in regard to her age and appearance, Harms agreed that she would have a place for Ponder. Ponder later called Harms again, asking if Ann Miller could come with her, to which Harms agreed. Both Ponder and Miller traveled to Norfolk by interstate air line carrier on January 21, 1957. Upon their arrival at the Norfolk Airport, Ponder called Harms and pursuant to that call a meeting place was arranged and thereafter both Ponder and Miller engaged in acts of prostitution in Harms' establishment.

The evidence indicated that Harms knew neither of these women prior to the time of their arrival in Norfolk. The evidence also shows that both telephone calls were initiated by Ponder and that it was her suggestion that both she and Miller come to work for Harms. The evidence fails to show that Harms knew that Ponder was making the call from any point outside of the State of Virginia. While we do not know that Harms would have been deterred or acted otherwise than she did had she known that Ponder and Miller were calling from Detroit, nevertheless we feel that the absence of evidence of such knowledge on the part of Harms has an important bearing on the validity of the conviction on this third count. The constitutionality of the White Slave Traffic Act has been upheld as a proper exercise of the powers of Congress solely under the commerce clause of the Federal Constitution, art. 1, § 8, cl. 3. Hoke v. United States, 227 U.S. 308, 33 S.Ct. 281, 57 L.Ed. 523. Accordingly, the gravamen of the offense is the inducement or persuasion to travel in interstate commerce for the immoral purposes set forth in the Act. The immoral acts or pursuits in themselves are exclusively the subject of regulation under the police power of the state where they are committed. The statute makes the intent to transport the woman in interstate commerce for such immoral purposes an element of the crime. United States v. Grace, 2 Cir., 73 F.2d 294; Sloan v. United States, 8 Cir., 287 F. 91. It seems clear that the Government must present evidence showing the intent of the defendant in regard to the interstate aspect of the offense. This intent of the defendant must necessarily exist prior to, or concurrent with the interstate trip of the victim. Alpert v. United States, 2 Cir., 12 F.2d 352; United States v. Grace, supra. With respect to the third count, there is no evidence which would show that Harms had knowledge that she was inducing or persuading Ponder to make an interstate trip to take

her place in the admittedly illegal establishment of Harms. The record shows that the District Judge granted a motion for judgment of acquittal with respect to the fourth count involving Ann Miller, and it is our opinion that the Court should likewise have granted the motion for judgment of acquittal on the third count for the reason set forth above.

■ With respect to the fifth count charging Harms, Cousins and Day with conspiracy, as we have already noted the District Court granted a motion for judgment of acquittal as to the defendant, Day. While the indictment in the conspiracy count specified the period from November, 1955, to the date of the indictment, as a result of the disposition of the first count, the District Judge in his charge to the jury indicated that the conspiracy, if any, did not take place until shortly prior to January 7, 1957. We think the Court acted correctly in so confining the period of the alleged conspiracy and the question before us is whether the evidence supports the jury's verdict on the conspiracy count pursuant to such charge.

The evidence shows that Harms and Cousins are sisters and were together in a house of prostitution in Norfolk in 1954. However, Cousins moved to Florida in the early part of 1955, and with the exception of "two or three visits a year," did not return to Norfolk until sometime after January 1, 1957. The evidence further shows that whenever she came to Norfolk during that period she stayed at the residence of her sister, Harms.

Unquestionably, Cousins evidenced the same lack of moral fibre as her sister, and was a willing helper to her sister in running her establishments when the occasion demanded. Her assistance in a number of instances is clearly shown by the evidence. It is equally clear, however, that Harms was the "madam" and controlled both the purse and policy of the business. The maid, Rebbie Knight, in speaking of Cousins' activities, stated, "Well, she would maybe try to give her

sister a hand, but it was her sister's business."

Undoubtedly, there was a sufficiency of evidence to convict Cousins of conspiracy to maintain a house of prostitution, but it does not necessarily follow that the evidence was sufficient on the charge of conspiracy to violate the White Slave Act in this case. Concededly, Cousins was absent from active participation on the Norfolk scene from early 1955 until after January 2, 1957. The government agent who had Harms under surveillance during that period testified that he had never seen Cousins during that entire time nor until sometime after January, 1957. She was not in Norfolk at the time of the call from Harms to Bruno. Under the circumstances, it would appear on the evidence that the conspiracy necessarily had to come into being, if at all, subsequent to the telephone call to Bruno and prior to her arrival at Norfolk Airport on January 7th. There is no direct evidence of any agreement between Cousins and Harms, and, accordingly, the conviction of Harms on the alleged conspiracy rests solely on inferences drawn from her overt acts together with the other evidence presented in this case.

■ The overt acts of Cousins placed her under a high degree of suspicion. However, proof of overt acts in themselves is not sufficient, for it must be established that the conspiracy or agreement which is charged to have existed and which is the gist of the offense had been formed before and was existing at the time of the commission of the overt act or acts. Dahly v. United States, 8 Cir., 50 F.2d 37; United States v. Grossman, D.C., 55 F.2d 408. There must be proof of the unlawful agreement, either expressed or implied, and participation with knowledge of the agreement. Davidson v. United States, 8 Cir., 61 F.2d 250. The agreement of conspiracy may, of course, be proven and established by circumstantial evidence. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Clune v. United States, 159 U.S. 590, 16 S.Ct. 125, 40

L.Ed. 269. Even though it is not necessary that such circumstantial evidence exclude every reasonable hypothesis consistent with innocence,[1] nevertheless, the evidence should be sufficient to prove this element of the crime beyond a reasonable doubt. As was stated in Dahly v. United States, supra, "circumstantial evidence is equally available with direct evidence to prove the conspiracy, but suspicion or conjecture cannot take the place of evidence. Guilt must be established beyond a reasonable doubt, and, where the evidence is as consistent with innocence as with guilt, no conviction can properly be had." [50 F.2d 43.]

When the evidence with respect to Cousins is appraised in this light, it occurs to us that it is not of such convincing degree as to warrant more than a mere probability or conjecture of guilt. With a total absence of direct proof of the essential agreement between Cousins and Harms, we feel that the inference drawn from the evidence with regard to Cousins on the fifth count is "so tenuous as to amount to mere speculation." See Call v. United States, 4 Cir., 265 F.2d 167, 173. We do not believe that the sum of the circumstantial elements in the record in this case is sufficient to support the conviction of the defendant Cousins on the conspiracy count; and since a person cannot conspire with himself or herself, it necessarily follows that the motion of both defendants as to the fifth count should have been granted.

Our conclusion requires the reversal of the conviction of Cousins and her discharge from further proceedings. Harms, however, received a general sentence of thirty months and a fine of $1,-000.00 imposed jointly upon counts two, three and five. We have found that she was improperly convicted on counts three and five. However, the penalty imposed upon her does not exceed that which might have been imposed under the second count had it stood alone. The conviction on the second count being sufficient in itself to support the sentence, we must affirm the conviction of Harms. Claassen v. United States, 142 U.S. 140, 12 S.Ct. 169, 35 L.Ed. 966; Whitfield v. State of Ohio, 297 U.S. 431, 56 S.Ct. 532, 80 L.Ed. 778.

Affirmed in part, reversed in part and remanded.

---

1. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150.