UNITED STATES of America,
Appellee,

v.

PRIVATE BRANDS, Inc., and Francis P. Carey, Defendants-Appellants.

No. 79, Docket 24053.

United States Court of Appeals
Second Circuit.

Argued Nov. 4, 1957.

Decided Dec. 19, 1957.

Writ of Certiorari Denied March 3, 1958.
See 78 S.Ct. 542.

Palmer, Masia & Palmer, New York City, for appellants.

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., for appellee, Marie L. McCann, Brooklyn, N. Y., Asst. U. S. Atty., of counsel.

Before SWAN, HINCKS, and WATERMAN, Circuit Judges.

SWAN, Circuit Judge.

The appellants were convicted on each count of a twenty-one count indictment charging violations of 18 U.S.C.A. § 1001.[1] In substance the charge was that they falsely and fraudulently represented to an agency of the United States that bottles of chloroform purchased by the government from Private Brands, Inc., of which Carey was President and controlling stockholder, conformed to the standards of the United States Pharmacopoeia, referred to as "USP," when in fact they did not, as defendants well knew. In sixteen of the counts the false representation was made by submitting to Armed Services Medical Procurement Agency a bill for payment to Private Brands which contained a certificate signed by the corporation's president that "the above bill is correct and just." In counts six to ten inclusive the appellants were charged with concealing by trick or device a material fact, namely, that chloroform shipped and billed to the Agency had been previously rejected for non-conformity to the USP specifications, and that this fact was concealed by submitting bills which identified the shipments under a different lot number than that which had been rejected.

██ The appellants' first point is that the court should have directed a verdict of acquittal for insufficiency of evidence. There is no merit in this point. There is substantial evidence to support the jury's verdict.

Private Brands, Inc., was in the contract packaging business, that is, it did not manufacture the products it sold but packaged products obtained from others. The prosecution proved from the defendants' own records that the chloroform they had, except for a very small amount purchased from McKesson & Robbins, and hence the only chloroform

---

1. § 1001. Statements or entries generally

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willingly falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

which they could possibly have used to fill Private Brands' contract with the Agency had been purchased from Du Pont. It was proved that Du Pont chloroform was "Technical" chloroform and did not comply with the specifications for USP chloroform as the defendants knew, and they purchased it from Du Pont as "Technical" chloroform at a substantially lower price than they would have had to pay for USP chloroform. With respect to counts six to ten inclusive, there was evidence that after rejection by the government of samples taken from the Du Pont chloroform numbered by the defendants lot 2049, they relabelled it as lot 2081 and resubmitted the same chloroform without change; and that when, after delivery, the defendants were again advised that the shipments did not comply with USP requirements and an F.B.I. agent was sent to investigate, Carey told the agent that he, with the assistance of two other men, had reworked the chloroform with activated carbon before it was relabelled as lot 2081. But the men he named as his assistants, although instructed by him to testify that the chloroform had been reworked, denied without contradiction at the trial that they had assisted him or had any knowledge that the chloroform had been reworked. Carey himself did not take the stand. The testimony above related is amply sufficient to support the jury's verdict.

It is true that the government's own proof showed that samples taken at random from both lot 2081 and another lot numbered 2105, when tested prior to delivery, were found to be acceptable.[2] The appellants make much of this and contend that the chloroform conformed with USP requirements when delivered and that the deviations disclosed by later tests long after delivery may have occurred as a result of chemical reaction between the contents of the bottle and the inner adhesive seal of the Gutman cap with which the bottle was closed. However, it was for the jury to appraise the force of these contentions and we cannot say that the jury acted unreasonably in relying on the undisputed facts that the defendants' only source of supply was the Du Pont "Technical" chloroform and that the evidence of an attempted collusive cover-up, as to which the F.B.I. agent testified, was corroborated by two of the defendants' employees.

The second, and most substantial, of the appellants' contentions is that Judge Galston erred in not permitting Mr. Carey, who is not a lawyer, to act as his own attorney. His request to do so was made at the opening of the day set for trial but before a jury had been empanelled. Mr. Driscoll, a competent lawyer, selected by Mr. Carey to represent him and his corporation, whose interests were conceded to be identical, had been attorney for both defendants for some seven weeks. At no time prior to the date set for trial, although the case had been twice called for trial and adjourned at the defendants' request, had Mr. Carey expressed any dissatisfaction with having Mr. Driscoll represent both defendants. His explanation of why the motion was made on the day set for trial was that he had not had time to indoctrinate Mr. Driscoll on the chemistry of chloroform and thought that he himself was better qualified to cross-examine expert witnesses whom the government would call. He was content to have Mr. Driscoll continue as attorney for Private Brands but wanted to represent himself or at least to be appointed as co-counsel so that he might cross-examine. Judge Galston denied the motion, stating that he regarded Mr. Driscoll as a very competent attorney, that he would permit Mr. Carey to sit at the counsel table for consultation, and that if a time came when he thought Mr. Carey should cross-examine, he would

2. These samples were left at the corporation's office to be sent to the government laboratory for testing, and the government infers that they must have been tampered with before being sent, although how that could have been done without breaking the seal placed over the bottle cap by the inspector who selected the samples, is left to conjecture.

permit it. However, during the trial Mr. Carey was not permitted to take up the cross-examination of any witness.

■■ It is well settled as a general principle that an accused has the constitutional right to the assistance of counsel and the correlative right to dispense with a lawyer's help. Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268. But as this court said in United States v. Mitchell, 2 Cir., 137 F.2d 1006, 1010: "Obviously, however, those rights cannot be both exercised at the same time." And an accused's right to represent himself is not so absolute that it must be recognized when to do so would disrupt the court's business. United States v. Mitchell, 2 Cir., 138 F.2d 831, certiorari denied 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083; United States v. Foster, D.C.S.D.N.Y., 9 F.R.D. 367, 372; see also Overholser v. De Marcos, 80 U.S. App.D.C. 91, 149 F.2d 23, 26, certiorari denied 325 U.S. 889, 65 S.Ct. 1579, 89 L.Ed. 2002. In the case at bar Mr. Carey in effect wished to be represented by the attorney for the corporation, whose interests were identical with his own, and also act as his own attorney. The trial judge may well have thought this would cause delay and confusion in the trial. We cannot see any abuse of discretion in the way he handled the matter, nor any prejudice resulting to the defendants.

■ The remaining contentions of the appellants require little discussion. In point three it is urged that the indictment is multiplicitous because each false statement is alleged as a separate count. They contend that only one crime was committed since all the false statements related to deliveries made under a single contract. The cases relied upon, Ex parte Snow, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 and United States v. Universal C. I. T. Credit Corporation, 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260, are readily distinguishable. The applicable rule is stated in Doherty v. United States, 10 Cir., 193 F.2d 487, 488; Berg v. United States, 9 Cir., 176 F.2d 122, 125, certiorari denied 338 U.S. 876, 70 S.Ct. 137, 94 L.Ed. 537; United States v. Marzani, D.C.D.C., 71 F.Supp. 615, 618, affirmed Marzani v. United States, 83 U.S.App.D.C. 78, 168 F.2d 133, affirmed 335 U.S. 895, 69 S.Ct. 299, 93 L.Ed. 431, rehearing granted and decision adhered to, 336 U.S. 922, 69 S.Ct. 653, 93 L.Ed. 1084. Furthermore, any objection as to multiplicity of the indictment was waived by not raising it before trial, Anderson v. United States, 6 Cir., 189 F.2d 202, 204. Since the appellants could have been fined $10,000 on any one count and Carey could have been given a prison sentence under 18 U.S.C.A. § 1001, it is obvious that they have not been prejudiced by the sentences imposed.

We find no reversible error in the rulings on evidence, the exclusion of which is complained of in appellants' point four. The necessary foundation to make it admissible was not laid.

■ The complaint about the prosecutor's summation is much ado about nothing. From the context it is clear that his statement that "I know" that the samples which bore lot number 2081 came from the McKesson & Robbins chloroform was a conclusion drawn from the particular evidence to which he referred, and could not have led the jury to believe that his statement was based on evidence known to the prosecutor but not introduced. Henderson v. United States, 6 Cir., 218 F.2d 14, 19, certiorari denied 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253, and United States v. Klein, 7 Cir., 187 F.2d 873, 876, certiorari denied 341 U.S. 952, 71 S.Ct. 1021, 95 L.Ed. 1374, are applicable, not Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314.

■ The alleged errors in the charge of the court are not sustainable. The failure to define "wilfulness" or charge as to the presumption of innocence was not error in the absence of requests to do so. See United States v. Capitol Meats, Inc., 2 Cir., 166 F.2d 537, 538, certiorari denied 334 U.S. 812, 68 S.Ct. 1018, 92 L.Ed. 1743; United States v. McGuire, 2 Cir., 64 F.2d 485, 493. The failure of a defendant to re-

quest charges omitted or to take exception to the charge as given normally precludes any claim of error,[3] although an appellate court may reverse for errors not called to the attention of the trial judge if they are such as affect substantial rights.[4] We see no errors of this character and the charge as given was correct and adequate.

Judgment affirmed.

---

3. Rule 30, F.R.Cr.P., 18 U.S.C.A.; United States v. Campisi, 2 Cir., 248 F.2d 102, 107.

4. Rule 52(b), F.R.Cr.P.