**Charles MANSON, Petitioner,**

v.

**Peter J. PITCHESS, Sheriff of Los Angeles County, California, The People of the State of California, Evelle J. Younger, District Attorney of the County of Los Angeles, California, The Superior Court of the State of California, Respondents.**

**No. 70–1504.**

United States District Court,
C. D. California.

Sept. 2, 1970.

---

I. A. Kanarek, Van Nuys, Cal., for petitioner.

Thomas C. Lynch, Atty. Gen., William E. James, Asst. Atty. Gen., Jack K. Weber, Deputy Atty. Gen., Evelle J. Younger, Dist. Atty., Harry Wood, Head, Appellate Division, Donald Kaplan, Deputy Dist. Atty., John D. Maharg, County Counsel, Michael H. Dougherty, Deputy County Counsel, Los Angeles, Cal., for respondents.

## MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS.

CRARY, District Judge.

The petitioner alleges that he is presently imprisoned in the Los Angeles County Jail in the custody of the County Sheriff, Mr. Peter J. Pitchess, on an In-

dictment charging the murder of seven people. [Paragraphs III and IV, page 2, petition.] It appears from the petition and the Responses of the respondents that the trial on said Indictment commenced June 15, 1970, and is still in progress.

The grounds urged for relief by petitioner are substantially as follows:

(1) The trial court has ultimately refused to allow him to represent himself in violation of his constitutional rights under the 6th and 14th Amendments.

(2) That during the two weeks prior to his removal from in propria persona status he was not allowed to use the telephone, and after he was granted the right to defend pro se he was subjected to treatment as to induce him to accept the appointment of a lawyer to represent him. The alleged treatment, which he refers to as "indignities", appears on pages 3 and 4 of the within petition.

(3) He was denied a speedy trial in that he was not brought to trial within sixty days from indictment, as required by Section 1382 of the California Penal Code, but that his trial was long and unreasonably delayed in that he was arrested in December, 1969, and the trial did not commence until June 15, 1970.

The applicable provisions of Title 28, United States Code, Section 2241, which state the power to grant the Writ of Habeas Corpus, provide that the Writ shall not extend to a prisoner unless "(3) He is in custody in violation of the Constitution or laws * * * of the United States." As stated by the United States District Court, District of Nebraska, in Saunders v. Crouchley, 274 F. Supp. 505, 508:

"[3–5] It is established that the writ of habeas corpus *may not be used as a means of securing a judicial decision of a question* which, even if determined in the petitioner's favor, would not result in his immediate release. McNally v. Hill, 293 U.S. 131,

55 S.Ct. 24, 79 L.Ed. 238 (1934)." [Emphasis added.]

■ The consecutive sentence rule stated in McNally v. Hill, cited in the Saunders case, supra, which was overruled by the Supreme Court in Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L. Ed.2d 426, is not here involved, since the petitioner is not in custody under a sentence but by reason of the Indictment under which he is presently on trial. There has been no conviction of, nor imposition of sentence upon petitioner, nor do we know that the pending trial will result in conviction. A determination that the petitioner is entitled to defend pro se will not at this time entitle him to release from State custody. His case being presently on trial, the petition is premature.

■ Surely it was never contemplated that in the exercise of a defendant's habeas corpus rights in the federal court that he should be allowed to interrupt a criminal trial in progress in the State court at any time he wishes to assert a violation of his rights under the United States Constitution.

Having in mind the possibility that final determination, after appeal in the instant matter, of the issue of petitioner's right to defend pro se might require this Court to rule on the said constitutional issue in this Habeas Corpus proceeding before such time as the petitioner could be said to be in custody under a conviction and sentence, the Court gives consideration to the question of whether, in the circumstances, petitioner's constitutional rights have been violated by denial of his request to defend himself in the pending criminal litigation.

The petitioner was indicted on or about December 8, 1969, on seven counts of murder and for conspiracy to commit murder. First represented by the Public Defender, he was allowed to represent himself from about December 24, 1969, to March 6, 1970, when counsel was appointed to represent him by Superior Court Judge William B. Keene, Los Ange-

les, California. Petitioner is presently represented in his trial and in the instant matter by Attorney I. A. Kanarek, retained by petitioner. Counsel was first appointed to represent petitioner under Section 987a on March 6, 1970, at which time Attorney Charles Hollopeter was assigned. On March 19, 1970, Attorney Ronald Hughes was substituted for Mr. Hollopeter on oral motion of petitioner. On or about April 14, 1970, Attorney Richard Walton was appointed to represent him. On June 1, 1970, Attorney I. A. Kanarek was substituted by the Court at petitioner's request as counsel for petitioner and has represented him since that date.

On several occasions since counsel was first appointed to represent him, petitioner has sought to be reinstated as counsel for himself. He now seeks release from confinement or that he be allowed to proceed in propria persona " * * * or as co-counsel with retained counsel * * *." [Paragraph 4, prayer, p. 6, petition.] In his petition he says he has repeatedly stated that he does not wish to proceed with his trial without an attorney at his side as his reading and writing skills are limited because his education does not extend beyond the fifth grade. [Paragraph IV, p. 5, petition.]

In revoking petitioner's in propria persona status on March 6, 1970, Judge Keene said:

"At the time that I permitted you to go and act as your own attorney, in pro per, I felt that I had a constitutional obligation.

DEFENDANT MANSON: You still do.

THE COURT: To permit you—I agree. I have a constitutional obligation to permit you to act as your own attorney, if I am satisfied, based upon your conduct, that you are capable of making an intelligent waiver of your right to act as an attorney, but there's a corollary that goes with that, Mr. Manson, which I've always known, and that is to observe your performance prior to trial, to determine by what you've attempted to do in these various courtrooms to determine whether or not you are, in fact, capable of making that determination that you want to waive that constitutional right and act as your own attorney.

Now, in my review of the file and my review of your conduct since I initially permitted you to do so, I am satisfied that you cannot act as your own attorney.

I am satisfied, based upon a complete review of everything that I have seen in this file, my personal observations of you, my reading your performances in other courtrooms, that if you went to trial in a courtroom in front of a jury on charges as complex and as serious as those with which you are faced, it would be a fundamental, absolute denial of due process, and based upon what you have done as far as your attempts to act as your own lawyer, it becomes crystal clear to me and abundantly clear to me that you are incapable of acting as your own attorney." [R.Tr. March 6, 1970, Case No. A–253 156, line 14, page 16, to line 15, page 17.]

Judge Keene goes on to say that he is not relying only on his personal views as to petitioner's right to defend pro se but on those of Superior Court Judges Malcolm M. Lucas and George M. Dell, as well. [R.Tr. March 6, 1970, pp. 17–18.]

The conclusions of those Judges as to the petitioner defending pro se were founded on proceedings had before Judge Dell on January 14 and January 28, 1970, and before Judge Lucas on February 6, February 16 and June 9, 1970. See reporter's transcripts of those hearings.

The numerous court proceedings prior to the commencement of trial on June 15, 1970, in which petitioner appeared, in addition to those referred to hereinabove, include hearings before Judge Keene on December 17, December 22 and December 24, 1969, February 9, March 11 and March 19, 1970, and hearings be-

fore Superior Court Judge Charles H. Older on May 27 and June 1, 1970.

Transcripts of all of those proceedings referred to above are on file and are reviewed in many of the pertinent parts in the Response filed herein, on behalf of the People of California, on August 11, 1970.

This Court has reviewed the pertinent portions of the file in petitioner's pending Superior Court action and the transcripts, referred to hereinabove, of the proceedings in that case and finds that the Superior Court record supports Judge Keene's conclusions and Order denying petitioner the right to defend pro se in the criminal case in which he is now on trial. [R.Tr. March 6th, pp. 1–23.]

The many motions filed by petitioner in the State case from December 22, 1969, to March 6, 1970, when counsel was again appointed to represent him, are noted hereafter in discussion of the issue concerning speedy trial.

After Judge Keene's Order of March 6, supra, Judge Dell, on April 17, 1970, also denied one of the motions of petitioner to defend pro se, with some pertinent observations.[1] On that date, trial of the case was continued to June 15, 1970. [R.Tr. April 17, 1970, Case No. A–253 156, pp. 5–10.] The case of People v. Daniels, referred to by Judge Dell

---

1. "DEFENDANT MANSON: I would like to defend myself.

THE COURT: I will put my ruling on the record. We went through this yesterday and I will put my ruling on the record in just a moment.

\* \* \* \* \*

Now, before I rule on the motion I am going to rule on the pro per matter. I have had presented to me and I have had the time to read a Notice of Motion for hearing on petition to proceed in propria persona. This motion unlike many of those presented on Mr. Manson's behalf is well typed, literate, intelligible, is obviously not prepared by Mr. Manson. I am not referring to your motions, Mr. Shinn, with the vague allusion I made. I am referring essential to the motions prepared by The Society of Infinite Soul and other individuals who helped Mr. Manson.

\* \* \* \* \*

I simply want to indicate on the record that as far as I am concerned Mr. Manson has demonstrated conclusively his inability to properly either appreciate the risk of representing himself or to demonstrate any type of ability with which he could effectively represent himself.

This may sound like a rerun of yesterday's proceedings and indeed I suppose it is. I want to indicate that I am relying on the fact that a defendant is entitled to some effective representation and the more serious the charges are the more carefully a Court must weigh the equities in determining whether or not a defendant may be permitted to represent himself.

I am referring particularly to the following cases which I cited yesterday. The citations are not necessary, but I refer first to the case of People against Daniels and Simmons which held it was not error for the trial judge to refuse to permit the defendant to represent himself.

Secondly, People against Floyd and Milton which made a similar determination, and finally I have referred most recently to the case of People against Robles wherein a defendant was permitted to represent himself at the penalty phase of the case after he had been represented by counsel. At his own insistence he was permitted to represent himself and he not only represented himself but he had two attorney advisers which approximately is what Mr. Manson has wanted in this case.

Notwithstanding the existence of the two attorney advisers the Supreme Court held that it was prejudicial error to permit Mr. Robles to represent himself and not surprisingly he received the death penalty after representing himself and a new penalty trial was granted.

I incorporate by reference in this ruling that has transpired in this case with reference to Mr. Manson's desire to represent himself that I have read the transcript of those proceedings. I was personally present in Department 107 when Judge Keene revoked Mr. Manson's pro per status. There is absolutely nothing that is stated in this Notice of Motion that is new at all. It is simply a rehash, although stated much more fluently and intelligently than anything Mr. Manson has stated on his own behalf, and I compliment Mr. Aberson for presenting the argument. But there is no reason for me to change my view on this matter and I won't hear further. The defendant will not be permitted to represent himself."

at page 7, is reported in Cal., 80 Cal. Rptr. 897, 459 P.2d 225 (1969).

## PETITIONER'S RIGHT TO REPRESENT HIMSELF

As noted above, petitioner seeks an order requiring that he be appointed to represent himself or that he be allowed to proceed in the case now on trial as co-counsel.

The Court of Appeals, 2nd Circuit, in United States (Maldonado) v. Denno, 348 F.2d 12 (1965), found that Maldonado had made an unequivocal request to represent himself at his trial for burglary in the New York State court. In a petition for Writ of Habeas Corpus following conviction and sentence, petitioner alleged he had been denied his Federal right " * * * to conduct his own defense without the aid of counsel." [Page 13.]

The Court, at page 15, observes:

"The case law, although wavering in spots, appears to lay down the following doctrines concerning a criminal defendant's right to represent himself at trial. The right derives, not from legislative enactments or judicial rules, but from the Federal Constitution." [Citing cases.]

After stating that the right is applicable to State trials as well as in Federal prosecutions, the Court goes on to say:

"This right of an accused to defend himself, as we conceive it, rests on two bases. See Adams v. United States ex rel. McCann, supra, 317 U.S. [269] at 279, 63 S.Ct. [236] at 241 [87 L.Ed. 268]; United States v. Mitchell, supra, 137 F.2d [1006] at 1011. He 'must have the means of presenting his best defense,' and to this end he 'must have complete confidence in his counsel.' Without such confidence a defendant may be better off representing himself. Moreover, even in cases where the accused is harming himself by insisting on conducting his own defense, respect for individual autonomy requires that he be allowed to go to jail under his own

banner if he so desires and if he makes the choice 'with eyes open.' " [Page 15.]

In Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L. Ed. 268 (1942), the Supreme Court held that the accused,

" * * * with the considered approval of the court * * * ",

might waive trial by jury and likewise he might

" * * * competently and intelligently waive his Constitutional right to assistance of counsel." [Emphasis added.] [Page 275, 63 S.Ct. page 240.]

At pages 278–280, 63 S.Ct. at pages 241–242, the Court states:

"But we are asked here to hold that an accused person cannot waive trial by jury, no matter how freely and understandingly he surrenders that right, unless he acts on a lawyer's advice. In other words, although a shrewd and experienced layman may, for his own sufficient reasons, conduct his own defense if he prefers to do so, nevertheless if he does do so the Constitution requires that he must defend himself before a jury and not before a judge. But we find nothing in the Constitution, or in the great historic events which gave rise to it, or the history to which it has given rise, to justify such interpolation into the Constitution and such restriction upon the rational administration of criminal justice.

"The right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms. They rest on considerations that go to the substance of an accused's position before the law. *The public conscience must be satisfied that fairness dominates the administration of justice. An accused must have the means of presenting his best defense.* He must have time and facilities for investigation and for the production of evidence. But evidence and truth are of no avail unless they

can be adequately presented. *Essential fairness is lacking if an accused cannot put his case effectively in court*. But the Constitution does not force a lawyer upon a defendant. He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open. Johnson v. Zerbst, 304 U.S. 458, 468, 469, 58 S.Ct. 1019, 1024, 1025, 82 L.Ed. 1461.

"Referring to jury trials, Mr. Justice Cardozo, speaking for the Court, had occasion to say, 'Few would be so narrow or provincial as to maintain that a fair and enlightened system of justice would be impossible without them.' Palko v. Connecticut, 302 U.S. [319] at page 325, 58 S.Ct. [149] at page 152, 82 L.Ed. 288. Putting this thought in more generalized form, the procedural safeguards of the Bill of Rights are not to be treated as mechanical rigidities. What were contrived as protections for the accused should not be turned into fetters. To assert as an absolute that a layman, no matter how wise or experienced he may be, is incompetent to choose between judge and jury as the tribunal for determining his guilt or innocence, simply because a lawyer has not advised him on the choice, is to dogmatize beyond the bounds of learning or experience. Were we so to hold, we would impliedly condemn the administration of criminal justice in states deemed otherwise enlightened merely because in their courts the vast majority of criminal cases are tried before a judge without a jury. To deny an accused a choice of procedure in circumstances in which he, though a layman, is as capable as any lawyer of making an intelligent choice, is to impair the worth of great Constitutional safeguards by treating them as empty verbalisms.

"Underlying such dogmatism is distrust of the ability of courts to accommodate judgment to the varying circumstances of individual cases." [Emphasis added.]

Having in mind the principles announced by the Supreme Court in the Adams formalisms. They rest on considercase, supra, the granting to the defendant of the right to try his case pro se in any and all circumstances would not accomplish the intent or purpose of the said right. Judge Keene's conclusions, based upon supporting facts, are set forth above. Surely, the appointment of the petitioner to represent himself in the trial now in progress would not comply with the Supreme Court's admonition that,

"An accused must have the means of presenting his best defense.",

nor the requirement that,

"The public conscience must be satisfied that fairness dominates the administration of justice."

The right of a petitioner, who filed a petition for Writ of Coram Nobis in a Federal District Court, to conduct his own case pro se was upheld in United States v. Plattner, 330 F.2d 271 (C.A.2 1963). However, the Court of Appeals, after voicing the necessity of making full explanation to defendant of all his rights to and the advisability of having counsel, said:

"If the result is a waiver of the right to counsel and an election to defend *pro se*, the presiding judge should conduct some sort of inquiry bearing upon the defendant's capacity to make an intelligent choice." [Page 276.]

The Court in United States v. Private Brands Inc., 250 F.2d 554, 557 (C.A.2 1957), observes:

"It is well settled as a general principle that an accused has the constitutional right to the assistance of counsel and the correlative right to dispense with a lawyer's help. Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268. But as this court said in United States v. Mitchell, 2 Cir., 137 F.2d 1006, 1010: 'Obviously, however, those rights cannot be both exercised at the same time.' And an accused's right to represent himself is not so absolute that it must

be recognized when to do so would disrupt the court's business. United States v. Mitchell, 2 Cir., 138 F.2d 831, certiorari denied 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083; United States v. Foster, D.C.S.D.N.Y., 9 F.R.D. 367, 372; see also Overholser v. De Marcos, 80 U.S.App.D.C. 91, 149 F.2d 23, 26, certiorari denied 325 U.S. 889, 65 S.Ct. 1579, 89 L.Ed. 2002. In the case at bar Mr. Carey in effect wished to be represented by the attorney for the corporation, whose interests were identical with his own, and also act as his own attorney. The trial judge may well have thought this would cause delay and confusion in the trial. We cannot see any abuse of discretion in the way he handled the matter, nor any prejudice resulting to the defendants."

The United States District Court, Eastern District of Tennessee, United States v. Davis, 260 F.Supp. 1009 (1966), in a well reasoned opinion, discusses the right of defendant to defend pro se and the pertinent authorities, pages 1017 to 1021, stating at page 1020:

"In the light of the foregoing authorities, whether it be said that the right to defend *pro se* is constitutional, or merely statutory, it is clear that the right is not absolute, but is qualified, and may be denied under some circumstances."

The Court also held that the defendant suffered no prejudice by virtue of his representation by court-appointed counsel or from denial of the right to defend pro se (page 1021) and further concluded that the defendant Davis was not capable of knowingly or intelligently waiving the right to counsel and that the right to defend pro se would have disrupted the proceedings. [Pages 1020–1021.]

Although there is some authority to support the position that no prejudice need be shown where a defendant has been refused the right to represent himself, it is to be noted that *prejudice* is discussed in the authorities, supra, and even the Court in *Plattner*, supra, considered the issue of prejudice, holding that the right of the defendant had been prejudiced by denial of his request to represent himself in that Plattner "quite evidently both intelligent and articulate, would have probed deeper had he been given an opportunity to conduct the cross-examination himself." [330 F.2d page 277.]

In the instant matter, the petitioner is presently on trial and whether he has been or will be prejudiced by the trial court's order precluding him to defend pro se is not possible of determination at this time.

The waiver of right to counsel and the right to defend pro se are closely related matters. In Hodge v. United States, 414 F.2d 1040 (C.A.9 1969), the Court refers to the right of the defendant to waive his right to counsel and to so defend. Some of the leading cases, including Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309, and opinions of the Court of Appeals, 9th Circuit, on this subject, are discussed. [Pages 1042–1043.] At page 1042, the Court states:

"Here appellant clearly knew of his right. His 'waiver' lay in his assertion of his right to represent himself [1] —a right the court could not properly deny. 28 U.S.C. § 1654; Bayless v. United States, 381 F.2d 67, 71 (9th Cir. 1967); Reynolds v. United States, 267 F.2d 235 (9th Cir. 1959). *The question, then, is whether his assertion of this right was 'intelligent.'* [2] In this context we take this to mean whether he was sufficiently informed of the consequences of his choice. In our judgment he was.[3] " [Emphasis added.]

The Supreme Court of California has also held that the right to represent one's self in a criminal case is not unlimited and that one of the conditions precedent is a competent waiver of counsel. People v. Floyd, 1 Cal.3d 694, 464 P.2d 64, 83 Cal.Rptr. 608 (Jan. 27, 1970). In Juelich v. United States, 342 F.2d 29,

32 (C.A.5 1965) Ftn. 5, the Court cites United States v. Private Brands, supra, in holding that the Court has

" * * * considerable discretion to refuse to permit a defendant to discharge counsel."

█ Although the constitutional right to represent one's self is emphasized by the authorities and is not lightly to be denied, it also appears reasonable to conclude that the right is not absolute in every case but is qualified and may be denied in some circumstances. This Court concludes that the case at bar involves facts and circumstances which justify the denial by the trial court and the conclusion of Judge Keene, made after full consideration of the facts and circumstances surrounding petitioner's claim to defend pro se, that to allow petitioner to so defend would be a " * * fundamental, *absolute denial of due process* * * *." [Emphasis added.]

Petitioner indicates in his petition that he does not wish to be without counsel but desires to be with co-counsel and take part in the trial. Whether this position is to be considered as an alternative to his defending pro se is not entirely clear.

█ The rule appears to be well established in California that a defendant is not entitled, as a matter of right, to conduct a defense both in person and with counsel. People v. Ruiz, 263 Cal. App.2d 216, 69 Cal.Rptr. 473, 477 (1968); and People v. Mattson, 51 Cal.2d 777, 336 P.2d 937, 946 (1959). This is also the Federal rule. Duke v. United States, 255 F.2d 721, 725 (C.A.9 1958); Lee v. State of Alabama, 406 F.2d 466, 469 (C.A.5 1968).

## PETITIONER'S RIGHT TO A SPEEDY TRIAL

█ Petitioner's right to a speedy trial under the provisions of California Penal Code, Section 1382, does not appear to have been violated. That Section requires that a criminal case be dismissed in the following cases:

2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial in a superior court within 60 days after the finding of the indictment, * * *."

From the record in the state case, it appears that the delays complained of resulted from the many motions of petitioner or his requests for continuances. On December 24, 1969, petitioner asked for three weeks within which to enter his plea, January 14, 1970, he asked that he be allowed until January 28th to enter his plea, and on January 28th the Court ordered that a plea of not guilty be entered. The Court, on February 9, 1970, set the case for trial on March 30th. On March 19th petitioner waived his right to trial on March 30th and the case was set for trial on April 20, 1970. [R.Tr. March 19, pp. 21 and 26.] As noted above, Judge Dell, on April 17th, continued the trial to June 15, 1970, "in the interests of justice." [R.Tr. p. 10, April 17.] The continuance was requested by three of the defendants and their attorneys but was not agreed to by the petitioner. [R.Tr. pp. 3–10, April 17.]

Between December 22, 1969, and March 4, 1970, petitioner filed some ten different motions while he was defending pro se, including motions to substitute counsel, attacking the Indictment and the Court's jurisdiction, for unlimited interview of witnesses, for inspection of statements of witnesses, to set aside the Indictment (Section 995, Calif.Penal Code), for transcripts of proceedings had in Superior Court, to dismiss the action on the grounds that a fair and impartial trial could not be had in California, for public opinion polls at State expense to compel modernization of trial procedure, and to dismiss for violation of petitioner's right to speedy trial (Section 1382, Calif.Penal Code). [Superior Court case No. A–253 156.]

█ Although a criminal defendant may not be deprived of a speedy trial, defendant may not, by motion and other means, use his rights in an effort to evade and delay prosecution. People v.

Floyd, 1 Cal.3d 694, 464 P.2d 64, 83 Cal. Rptr. 608, supra.

Assuming, arguendo, that petitioner's right to a speedy trial under California Penal Code Section 1382(2), supra, was violated, it does not follow he is in custody in violation of a right under the United States Constitution. United States ex rel. Greer v. Pate, 393 F.2d 44, 47 (C. A.6 1968), where the Court states:

"On a petition for writ of habeas corpus we will consider violations solely of the federal Constitution and not alleged violations of the Illinois Criminal Code. McCoy v. Tucker, 4 Cir., 1958, 259 F.2d 714, 716; Title 28 U.S. C. § 2241(c) (3)."

Applying federal law to State court action, the Court in United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (C.A.2 1962), states:

"It has been held that the due process clause of the Fourteenth Amendment does not make the speedy trial provision of the Sixth Amendment directly applicable to state action. (Citing cases.) To establish a violation of the due process clause appellant must prove that the delay precluded a fair determination of the charges against him. Odell v. Burke, supra.

"[4] Four factors are relevant to a consideration of whether denial of a speedy trial assumes due process proportions: the length of delay, the reason for the delay, the prejudice to defendant, and waiver by the defendant. See Note, 57 Colum.L.Rev. 846, 861–63 (1957). These factors are to be considered together because they are interrelated."

Considering the four factors enumerated in United States v. Fay, supra, with the facts in the State case here involved, this Court concludes that the delay of the trial did not violate petitioner's 6th and 14th Amendment rights under the United States Constitution.

## EXHAUSTION OF STATE REMEDIES

It appears from the records that petitioner, in May, 1970, petitioned the California District Court of Appeals for a Writ of Mandate vesting in him the right to defend pro se or with co-counsel. Petition to the California Supreme Court for hearing, following denial of the petition by the District Court of Appeals, was denied without opinion on June 5, 1970.

■ The grounds raised herein as to speedy trial and as to alleged indignities, to which, petitioner asserts, he was subjected while he was defending his case pro se, have not been presented to or passed on by the Supreme Court, as required by Section 2254(b), Title 28, United States Code, and Deitch v. Maxwell, 337 F.2d 424 (C.A.6 1964); Langdon v. Patterson, 376 F.2d 29 (C.A.10 1967).

The issue concerning the alleged indignities, which petitioner says were to persuade him to give up his in pro per status, would now be moot so far as Habeas Corpus relief is concerned, since petitioner is now represented by counsel.

The Court of Appeals, 9th Circuit, in Christiansen v. O'Connor, 378 F.2d 364, 365 (C.A.9 1967), has ruled that where a petition for Writ of Habeas Corpus was filed after conviction but before sentence and where petitioner had an appeal pending from the State conviction and sentence in which appeal he raised the speedy trial question, the petition was properly denied. The Court observed that, although Christiansen had sought pre-trial relief by way of prohibition and mandamus in the California District Court of Appeals and Supreme Court, he had not exhausted his State remedies, since his appeal was still pending.

For like reason, petitioner, in the case at bar, has not exhausted his State remedies because he is obligated to exhaust his rights on appeal through the Supreme Court of California before seeking relief in the Federal courts from alleged failure to afford him speedy trial and from denial of his right to defend pro se.

■ A defendant convicted by a State court is not allowed to bypass appeal and seek Habeas Corpus relief in the

Federal courts. Fay v. Noia, 372 U.S. 391, 438–440, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Davidson v. Klinger, 411 F.2d 746, 747 (C.A.9 1969); and Nash v. United States, 342 F.2d 366, 367 (C.A. 5 1965).

If petitioner should be convicted, the right to appeal will be available to him and may not be deliberately bypassed. If he is acquitted, the claims of right to defend pro se and failure to have been afforded the right to speedy trial will be moot. The State remedies for the relief sought on those grounds has in no wise been exhausted by either appeal, which will be available should there be a conviction, or petition for Habeas Corpus to the California Supreme Court, should that form of relief hereafter become available to petitioner under the law.

Petitioner, in his prayer, also asks for an order restraining the State courts from prosecuting petitioner in the pending State case, No. A–253 156, supra.

■ Concerning the right of the Federal court to enjoin State court criminal prosecutions generally, the United States Supreme Court, in Cleary v. Bolger, 371 U.S. 392, 397, 83 S.Ct. 385, 388, 9 L.Ed. 2d 390 (1962), after observing that courts of equity have traditionally refused to enjoin criminal prosecutions, particularly where coordinate political authorities are involved, quotes from Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138, as follows:

" '[W]e would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court—all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution.' 342 U.S., at 123–124, 72 S.Ct. at 121, 122."

■ The complaints as to alleged mistreatment in jail, as listed by petitioner in paragraph IV of his petition, are not properly raised by Habeas Corpus proceedings. The Court of Appeals, 3rd Circuit, in Long v. Parker, 390 F.2d 816, 818 (C.A.3 1968), states:

"Traditionally, the writ of habeas corpus has functioned to test the legality of confinement rather than the manner in which the detention is administered.[6] Thus habeas corpus is not a proper proceeding to investigate complaints by prisoners of mistreatment since such complaints do not attack the legality of the confinement.[7]"

To like effect, United States v. Ragen, 337 F.2d 425 (C.A.7 1964); and Cates v. Ciccone, 422 F.2d 926 (C.A.8 1970). In the Cates case, the Court observes:

"It is settled law in this circuit that a petition for a writ of habeas corpus is not the appropriate remedy to seek correction of alleged unconstitutional prison discipline. (citing cases)."

It should be noted that the petitioner has pending in this Court an action for alleged violation of his civil rights entitled Charles M. Manson v. V. Bugliosia et al., No. 70–1267–EC, filed June 8, 1970, wherein he seeks injunctive relief and damages on substantially the same grounds as claimed herein as constituting mistreatment and indignities.

Petitioner's Traverse does not allege any facts or present argument not set forth in his petition herein except with reference to the denial by Superior Court Judge Older, on August 24, 1970, after hearing, of petitioner's motion for order requiring the Sheriff to cease and desist from harassing defendant. The Traverse

contains no citation of case authority or statute other than "20 U.S.C. 2254." It is assumed that the intended reference was to Title 28, United States Code.

For the reasons discussed hereinabove, the within petition for Writ of Habeas Corpus is ordered denied.